In Equity.

JAMES M. W. HALL *vs.* MERRILL TRUST COMPANY et als.

Penobscot.    Opinion March 26, 1910.

*Corporations.   Stockholders' Trust Agreements.   Validity.   Waiver.   Revocability.*
*Good Faith.*

Two sets of stockholders transferred their shares to a trust company to prevent a third set from acquiring control, under an agreement that new certificates should be issued to the trustee, that the stock should be voted as three specified stockholders or a majority should direct, that the dividends should be sent to the owners, and that the trustees should sell the shares for such price and at such time as the named stockholders, or a majority of them, might direct, provided that sufficient shares be sold to constitute a majority of the outstanding stock.

*Held:*  1.  That the agreement was valid, creating a power of sale with incidental provision for voting, and not a voting trust with incidental power of sale, and that it authorized a sale of stock at public auction.

2.  That one of the specified stockholders waived the right to be consulted as to the advisibility of selling the stock, by repudiating the agreement.

3.  That the agreement was more than a mere power of attorney, and not revocable at the pleasure of the parties.

4.  That the evidence showed that the power of sale was exercised in good faith.

In equity.    On report.    Bill dismissed.

Bill in equity to enjoin the sale of 1282 shares of the capital stock of the Machias Lumber Company and held by the Merrill Trust Company in trust, and to determine the rights of the parties under a certain trust agreement.    A preliminary injunction was issued.    A motion to dissolve this injunction was filed by the defendants and at the hearing thereon, it was ordered that the preliminary injunction be dissolved unless the plaintiff, James M. W. Hall, file a stipulation agreeing that the cause should be prosecuted to final decree, etc., which said stipulation was duly signed and filed by the plaintiff.

Heard on bill, answers, replication, motion to dissolve the preliminary injunction, the order of court thereon, including stipulation by James M. W. Hall, and evidence. At the conclusion of the evidence the cause was "reported to the Law Court to be heard upon the said pleadings, motion, stipulation, and so much of the foregoing evidence as is legally admissible; the Law Court to determine the law and fact and enter decree accordingly."

The case is stated in the opinion.

*Symonds, Snow, Cook & Hutchinson, Tyler & Young, H. E. Bolles, and R. Frothingham,* for plaintiff.

*Heath & Andrews,* for defendants.

SITTING: EMERY, C. J., PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. The Machias Lumber Company is a corporation existing under the laws of the State of Maine, engaged in the manufacture and sale of lumber, and owning and operating valuable timber lands on the Machias River and mills at Machias, with an issued capital stock of 2552 shares. The plaintiff is the largest individual stockholder, and since its organization has been the president of the corporation which is admittedly a prosperous concern.

In January, 1905, the ownership was divided, broadly speaking, into three parts; the Hall interest, held by the plaintiff and his family, and business associates, representing 390 shares; the Ames interest held by the estate of John K. Ames, members of the Ames family and their friends, representing 892 shares; and the Oak and Simpson interest representing 787 shares. Other shares, amounting to 483 in number, may be termed miscellaneous, with a somewhat scattered ownership among outside parties, although some of these were also held by the Hall and Ames interests. The Oak and Simpson holding was in fact controlled by the American Realty Company, which is allied with the International Paper Company and which was, to quote the language of the plaintiff's brief, "a rival for the ownership and control of the timber lands operated by the Machias Lumber Company and which was seeking to acquire such lands through further purchases of stock of the Machias

Lumber Co." "In order to prevent Oak and Simpson" quoting further from the same source, "from acquiring the shares held by Hall and his associates, and thereby obtaining control of the corporation, or from acquiring the shares held by Ames and his associates thereby obtaining control of the corporation," an agreement was entered into between the several holders of the Hall and Ames interests, being nine in number and owning 1282 shares, a majority of the entire stock issued, whereby their several shares were transferred to the Merrill Trust Company to be held by it as trustee, under the terms of the following letter which was sent to it by each of these nine stockholders:

"To the Merrill Trust Company of Bangor Maine.

The certificates for two hundred and fifty-four (254) shares of the capital stock of the Machias Lumber Company issued to James M. W. Hall and duly assigned by me, and sent to you, you are to deal with as follows:

Said shares are to be transferred to you as Trustee and you are to take out a certificate to you as Trustee for the same. While it stands in your name as Trustee you are to vote said shares or cause them to be voted at all meetings of the stockholders of said Company upon all questions, and especially upon all questions of a lease or sale of the Company's property and franchise, as Jas. M. W. Hall of Cambridge, Mass., Alfred K. Ames of Machias, Me., and Wilson D. Wing, of Bangor, Me., or a majority of them direct.

In case of death or permanent disability of either Wilson D. Wing, Jas. M. W. Hall or Alfred K. Ames, herein mentioned, during the continuance of this agreement the authority vested in them in connection with and as mentioned in this trust shall continue up to the time of the expiration of this agreement by the following named successors: David L. Wing of New York City, in place of Wilson D. Wing; Frank S. Ames of Machias, Me., in place of Alfred K. Ames; James R. Hall of Cambridge, Mass., in place of James M. W. Hall.

While you hold such stock you are to pay to me all dividends which you may receive on said stock by forthwith sending to me a check to my order for the same.

You may thus hold said stock as Trustee until the expiration of December thirty-first, nineteen hundred and six, at which time if you shall not have sold the same as herein provided you are to re-transfer said shares to me.

You may sell and transfer said shares for such price and at such time as said Hall, Ames and Wing, or a majority of them may direct, provided, however, you shall sell at the same time sufficient shares of the capital stock of said Company as, reckoning my said shares in, shall be at least a majority of the shares of the capital stock of said Company then outstanding. You are thus to deal with said shares without any risk or liability on your part, excepting that you are to be responsible for the safe keeping of the same. This shall bind me, my heirs, executors and administrators and inure to my and their benefit whenever the context so requires or admits."

This agreement was renewed at its expiration and continued in force two years longer or until December 31, 1908.

No change was made in the personnel of the management, the plaintiff continuing as president and general manager, and his son, James R. Hall as treasurer; nor was there any change in the business policy of the company. In fact the corporate affairs were controlled by the same persons and in the same manner after this agreement was made as before.

In April 1908, the Oak and Simpson interest, being unable to obtain control of a majority of the stock, concluded to sell its own shares. Various interviews and negotiations were had between Oak and Simpson on the one side and the plaintiff on the other, the latter ostensibly representing Ames and Wilson as well as himself, and holding himself out to his associates, who reposed the utmost confidence in him, as desirous of purchasing this outstanding interest for the joint benefit of the three. At the final interview, however, held in Bangor on April 17, 1908, the plaintiff declined to accede to the exact terms required by Oak and Simpson and the trade fell through. Within fifteen minutes after the plaintiff declined to purchase, Mr. Oak took the matter up by telephone

with James R. Hall, the plaintiff's son in Cambridge, Massachusetts, in accordance with a previous request from the son that this should be done in case the proposed trade with the father was not consummated. The son was informed of the terms designated by Oak and Simpson, and before two hours had elapsed he had bought this outstanding interest, at the precise figure which had been declined by the father.

The plaintiff studiously delayed giving Ames and Wilson any information in regard to the transaction, professing utter ignorance of the situation, and as late as April 23, wrote Mr. Ames that he had not learned the details but would know who the purchasers were as soon as the stock certificates came in for transfer. A careful reading of the evidence and especially of the correspondence, leads to no other conclusion than that the plaintiff intended to have his own negotiations with Oak and Simpson fail, and the stock bought in by his son, so that it might be wholly controlled by his own friends, making the Hall interest a practical majority provided that portion covered by the trust agreement could be withdrawn. The plaintiff's contention that he was acting in good faith and that the sale to his son and his associates came as a surprise, overtaxes the credulity of the court.

The 787 shares belonging to Oak and Simpson were duly transferred to the purchasers, and then, the trust agreement having outlived its usefulness so far as the plaintiff was concerned, although only two days before the Oak and Simpson stock was purchased, he had suggested to Ames that it be continued for a further term of five years, he repudiated it in a letter to the Merrill Trust Company, dated May 9, 1908, in the following language:

"Referring to instrument under which your Trust Company purports to have received and to hold certain capital stock of the Machias Lumber Company, I beg to give you notice that I have been advised that the instrument in question is illegal and that your Trust Company has no authority granted it thereby and will make itself responsible for any damage which may accrue by reason of any attempted actions thereunder.

I give you this notice in order that you may act at your peril and with full knowledge of my position concerning the instrument in question.

Without waiving the foregoing notice, I further so far as I legally can, revoke any authority I may have granted by depositing with you three hundred and sixty-one (361) shares of the stock of the Machias Lumber Company."

Disregarding this repudiation or revocation on the part of Hall, except in so far as it operated as a waiver of any right of consultation as a member of the committee of three, Messrs. Ames and Wilson as a majority of that committee on November 2, 1908, directed the trustee to sell the 1282 shares held in trust, at public auction on November 25, 1908, after due notice thereof by publication and by sending a copy of such notice to all the equitable owners of the stock including the plaintiff. Thereupon the plaintiff brought this bill in equity to enjoin said sale and to determine the rights of the parties under the trust agreement. On November 23, 1908, a preliminary injunction was granted on bond. A motion to dissolve this injunction was filed by the defendants on December 15, 1908, and at a hearing on December 23, 1908, it was ordered that the preliminary injunction be dissolved unless the plaintiff on or before December 28, 1908, file a stipulation agreeing that the cause should be prosecuted to final decree, that in the meantime the Merrill Trust Company should not vote the stock held in trust, that no new stock should be issued and "that if the bill is dismissed on final decree, said shares may be sold under the trust agreement, provided there shall be sold at the same time sufficient shares as, reckoning in said three hundred and sixty-one shares, shall be at least a majority of the shares of the capital stock of the Machias Lumber Company then outstanding." This stipulation was duly signed and filed by the plaintiff. Under this stipulation, and on report of the evidence the cause is before this court. The decision involves a construction of the so-called trust agreement and its revocability.

The plaintiff's chief contention is that the agreement constituted a voting trust, irrevocable by its terms before December 31, 1908,

and as such was illegal and void as contrary to public policy. Assuming the premise, the learned counsel elaborately discusses all the decided cases involving the validity or invalidity of voting trusts, and places the one under consideration in the category of the illegal and void.

The assumption, however, is unwarranted. The appellation is a misnomer. The instrument was not designed for the purpose of creating a voting trust and does not purport to be such. The plaintiff would construe it as a voting trust with an incidental provision in regard to the sale of the stock, while in fact it is just the reverse and should be construed as creating a power of sale with an incidental provision in regard to voting. It is an agreement to guard against the sale of either the Hall or the Ames interest to an adverse third party, namely, the Oak and Simpson interest, and to provide for the sale of the entire stock held in trust, if deemed advisable, to which the right of voting, while so held by the trustee, was merely an unimportant incident. Upon this theory and this alone the bill in equity is framed. It neither expressly nor by implication labels the agreement as a voting trust nor assails it on that ground. The attack in the bill is based on grounds utterly inconsistent with the attack in the argument. The purposes are stated in these words:

"That said agreements were entered into under a peculiar existing state of facts, and for the purpose of protecting the interests of all the stockholders of the Machias Lumber Company from an adverse interest which was then seeking to acquire control. . . . That the principal purpose of said instruments of trust was to provide a means, if the occasion should arise, by which the properties and franchises of the Machias Lumber Company could be sold as an entirety for the benefit of all of its stockholders, majority and minority alike."

The grounds of complaint as stated in the bill are three:

1. "That said agreements contemplated only a sale by private treaty and did not contemplate a sale by public auction."

2. "That a majority of the committee has not directed said sale in the manner contemplated by the trust agreements."

3. "That all real reason for the existence of said agreements has ceased to exist, and no necessity or reason for a sale exists at the present time."

"That at the present time the plaintiff and those associated with him hold and claim to control the majority of the capital stock . . . and that a sale as advertised, if consummated, will deprive him and those associated with him, of such control." In other words, the material allegations in the plaintiff's bill, which are presumed to recite his claims for equitable relief are; the making of the trust agreement for a legal purpose and for the protection of all the stockholders of the company, including those outside as well as those inside the trust, and the illegality of the proposed sale by the trustee for two reasons, first, because it was to be at auction when the agreement contemplated a private sale, and second, because the plaintiff as one of the committee of three was not consulted by his associates prior to their directing the trustee to make the sale, with the further claim that the plaintiff having acquired control of the adverse interest, the trust agreement had come to an end. These are the substance of the grievances set forth in the bill and they may well be regarded as all that then existed in the mind of the plaintiff. The idea of a voting trust is not even hinted at, much less alleged. The evidence was also developed along the same lines. There was no complaint of any wrong past or present, to stockholders assenting or non-assenting by the exercise of the voting power. The same officers had been continued in control, the same business policy had been pursued. In fact the voting power had apparently ceased to be of any moment as the elections for the year were over, and the contemplated sale of stock required no exercise of that power whatever. It was to be made under the terms of the agreement when directed by a majority of the committee. So that the wrong complained of did not involve a stock vote or the voting power in the slightest degree. It is apparent that the learned counsel for the plaintiff, in drafting the bill and developing the evidence, kept in mind the true issue, whether the requirements of the trust agreement had been complied with in the proposed sale. It is also

apparent that the idea of a voting trust was conceived much later for the purpose of injecting into the agreement a taint that might possibly vitiate it ab initio.

The inconsistency of the two positions taken by the plaintiff is well illustrated in that part of the plaintiff's argument which claims that the alleged voting trust was "a scheme for the benefit of the participating stockholders and in fraud of the minority," while the bill avers that it was entered into "for the purpose of protecting the interests of all the stockholders of the Machias Lumber Company."

In short, the plaintiff's rights in the bill and on the facts, are based upon the validity of the agreement and non-compliance with its conditions, while the argument would treat it as invalid from the beginning.

The court adopts the plaintiff's first conception of his own case and regards the agreement as not constituting a voting trust. It is therefore relieved from considering the question of the legality of such a trust, a question most interesting in itself but quite outside the case at bar and therefore purely academic. Let us discuss the plaintiff's rights under the agreement as it is.

It is not contended that the transfer of shares of stock to a trustee to sell the same in compliance with the specifications of the trust agreement is invalid. Such an agreement violates no principle of law and no rule of public policy. It is in effect giving the trustee a power of attorney to sell on certain conditions. This instrument therefore in itself is valid. In what respect have its conditions been violated? The plaintiff's contention that this agreement contemplated only a private sale is untenable. Such is not its fair and reasonable interpretation. True it is silent on the question whether the sale shall be private or public. The direction is to "sell and transfer said shares for such price and at such time as said Hall, Ames and Wing or a majority of them may direct." It is for the committee or a majority of them to dictate the price and time of sale and inferentially at least the mode. Either a private or an auction sale might be within the power of that committee, but if the committee were to be limited to one method, that at auction would certainly be fairer to all concerned, especially where, as here,

notice was given to the public through newspaper advertisements and personally to each equitable owner. The letter of the agreement was not violated and its spirit was carefully observed.

The plaintiff's second contention is that the proposed sale was invalid because he was not consulted by his associates prior to the order of sale. This contention is also untenable. Whatever may have been the plaintiff's rights in this respect under the agreement, he had expressly waived them in his letter of May 8, 1908, to the Trust Company in which he ignored the contract and revoked any authority he had given thereunder. It would have been a useless proceeding for Ames and Wilson to have attempted to confer with him in regard to carrying out the terms of an agreement which he had repudiated in toto. The law does not require such idle and useless ceremony. The plaintiff cannot complain because he was taken at his word. *Milliken* v. *Skillings*, 89 Maine, 180; *Bowden* v. *Dugan*, 91 Maine, 141; *Pitcher* v. *Webber*, 103 Maine, 101.

Nor is there any virtue in the allegation that the plaintiff and his associates hold and claim to control a majority of the outstanding capital stock and to allow the sale to proceed might throw the majority into the hands of the defendants. If the plaintiff and his associates hold such a majority it can only be through the purchase of the Oak and Simpson interest, which was acquired under such circumstances as disclosed bad faith on the part of this plaintiff as we have already said, and if the sale of the trust stock is to be at public auction the plaintiff has the same right to bid for its purchase as have the defendants.

A single point remains, that of revocation. The plaintiff admitting for the sake of argument, that the agreement was not per se invalid, vigorously contends that it is at least revocable and has been revoked by him.

Had the plaintiff alone given the trustee the naked power to sell his shares under certain conditions and no other parties were involved, that power, if not coupled with any interest, might be revoked. But that is not this case. Here in order to effect a common purpose, an agreement was entered into between the nine stockholders each agreeing to transfer his stock to be held by the

trustee for that common purpose, in consideration that the others would transfer theirs. A mutual contract was thereby entered into, the consideration of which was valid and sufficient. *Clark* v. *Sigourney*, 17 Conn. 511; *Greene* v. *Nash*, 85 Maine, 148; *Bigelow* v. *Bigelow*, 95 Maine, 17. The written instrument was something more than a mere power of attorney. A valid trust was created giving certain powers and duties to the trustee. There was in effect a joint trusteeship, the Trust Company holding the legal title but the powers were to be exercised as Hall, Ames and Wilson or a majority of them should direct, so that these three were really the active trustees and the plaintiff in his bill, recognizing this, speaks of Ames and Wing as his co-trustees.

The agreement was not only to put the shares in trust but to keep them there until December 31, 1908, unless previously sold as therein specified. To permit any party to that agreement to withdraw from it at his pleasure would be to sanction the breaking of a contract, and to that a court of equity should not readily lend its aid.

Finally, the good faith of the defendants is attacked, but on this it is only necessary to say that the whole course of dealing on their part was open and honest from beginning to end, and in ordering the sale of the stock to be made before the expiration of the trust agreement they adopted the only course open to them to protect their own interests in a legal way and in a way which the plaintiff himself had previously approved of and solemnly agreed to.

Our conclusion therefore is that the instruments of trust referred to in the bill, were valid, unrevoked and binding upon all the parties thereto, that the bill must be dismissed with a single bill of costs for defendants, but under the stipulation the decree below must be so framed as to direct the trustee to sell all the stock now in its hands, at public auction, after due notice to all the equitable owners, with the same effect as if made before December 31, 1908.

*Decree in accordance with this opinion.*