### DELTA KAPPA EPSILON THETA CHAPTER

v.

### THETA CHAPTER HOUSE CORPORATION et al.

Supreme Judicial Court of Maine.

Argued June 6, 1995.

Decided July 28, 1995.

---

Jed Davis (orally), Jim Mitchell & Jed Davis, P.A., Augusta, for plaintiff.

Michael A. Nelson (orally), Michael J. Quinlan, Jensen Baird Gardner & Henry, Portland, for defendants.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Delta Kappa Epsilon Theta Chapter [the Chapter] appeals from a summary judgment entered in the Superior Court (Cumberland County, *Brodrick, J.*) in favor of Theta Chapter House Corporation [the Corporation] and Charles Bridge on the Chapter's complaint against them seeking a declaration that the title of real property transferred to the Corporation remains with the Theta Chapter House Association [the Association]. The Chapter contends, *inter alia*, that (1) the trial court abused its discretion by denying the Chapter's motion to amend its complaint and (2) the Association did not have the authority to transfer its assets to the Corporation. Finding no error in the record, we affirm the judgment.[1]

The record in this case reveals the following: In 1844, the Chapter was chartered as a chapter of the international fraternity, Delta Kappa Epsilon. In 1899, the Association was incorporated by several Bowdoin alumni to erect, maintain and manage a fraternity house for the Chapter. The fraternity house, built in 1900, is located at 4 College Street in Brunswick. In 1909, the Association's stockholders voted to establish a trust to hold all the Association's stock. The trust vested the three trustees with the power to vote the stock and "do all such things as by and under the articles of incorporation and By–Laws of said corporation and the laws of the State of Maine, the stockholders thereof are authorized and empowered to do."[2]

---

1. Because we affirm the judgment, we need not address the Chapter's additional contentions.

2. The trust created was not a "voting trust" pursuant to 13–A M.R.S.A. § 619 (1981). Not all trusts involving the voting interest of stocks are considered voting trusts. *See Hall v. Merrill Trust Co.,* 106 Me. 465, 471, 76 A. 926 (1910); *Oceanic Exploration Co. v. Grynberg,* 428 A.2d 1,

In 1991, Bowdoin adopted a policy requiring the Chapter to disaffiliate from the international Delta Kappa Epsilon fraternity or lose its recognition by Bowdoin. This issue was discussed at the Association's annual meeting on June 1, 1991. The two trustees who were present and four of the five directors of the Association voted to comply with Bowdoin's policy and disaffiliate from the international fraternity. In addition, the trustees and directors voted to form a nonprofit corporation.

On June 3, 1991, the trustees unanimously voted to amend the purposes of the Association to omit any reference to the Chapter or the Delta Kappa Epsilon fraternity. The amended language also provided that the corporate assets could be transferred to a nonprofit corporation to be formed by the Board of Directors.[3] In June 1991, the Corporation was formed as a nonprofit corporation "to own and provide for the maintenance and management of the house and grounds located at 4 College Street." Thereafter, the trustees of the Association unanimously voted to transfer without consideration all the assets of the Association to the Corporation. On August 19, 1991, by a duly executed quitclaim deed and a bill of sale, the assets of the Association were transferred to the Corporation. In October, at a special meeting, the trustees and directors of the Association voted to ratify, adopt, and approve this transfer, and thereafter, the Association filed a notice with the Secretary of State that it had ceased doing business.

In May 1993, the Chapter filed the present complaint against the Corporation and Charles Bridge, the president and a director of both the Association and the Corporation at the time of the transfer, alleging, *inter alia*, that the Association and Bridge did not have the authority to transfer the fraternity house to the Corporation. The Chapter requested a declaration that the title of the property remain with the Association for the use and benefit of the Chapter.

In March 1994, the Chapter filed a motion to amend its complaint to set forth the fact that in January 1994 the Association resumed doing business, new trustees and directors were appointed, and the new trustees and directors voted to ratify and confirm all previous actions taken by the Association. The Chapter wished to add a count to its complaint, naming the three newly appointed trustees as defendants and seeking damages from them for the alleged breach of their fiduciary duty. After a hearing on the Chapter's motion to amend its complaint and the defendants' motion for a summary judgment, the court denied the Chapter's motion on the ground that the subsequent conduct did not change the theory of the Chapter's case and granted the motion of the defendants. From the judgment entered accordingly, the Chapter appeals.

## I.

█ The Chapter first contends that the trial court erred in denying its motion to amend the complaint. We review the denial for an abuse of the trial court's discretion. *Kelly v. Michaud's Ins. Agency, Inc.,* 651 A.2d 345, 347 (Me.1994).

M.R.Civ.P. 15 provides in pertinent part:

(a) **Amendments.** ... [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

. . . .

(d) **Supplemental Pleadings.** Upon motion of a party the court may, upon reason-

---

6 (Del.1981). The three criteria of a voting trust are "(1) the voting rights of the stock are separated from the other attributes of ownership, (2) the voting rights granted are intended to be irrevocable for a definite period of time, and (3) the principal purpose of the grant of voting rights is to acquire voting control of the corporation." 5 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 2075 (perm. ed. rev. vol. 1987).

3. The amended purposes of the Association provided as follows:

> To provide for the maintenance and management of the fraternity house at Bowdoin College located at 4 College Street in Brunswick, Maine, either through this existing corporation or through the transfer of said fraternity house and other assets of this corporation to a related, nonprofit, nonstock corporation to be formed at the direction of this corporation's Board of Directors.

able notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

Because the trial court properly determined that the Chapter's motion to amend did not change the basis of its complaint, we discern no abuse of the court's discretion in denying the Chapter's motion to amend its complaint.

## II.

■ The Chapter also contends that the directors of the Association did not have the authority to transfer the fraternity house because such power was not provided by the Association's bylaws. It argues that changing the purposes of the Association is the

equivalent to changing the purposes of the trust and, therefore, the trustees lacked the authority to change the terms and conditions of the Association. Further, it argues that because the vote on June 1, 1991 was not unanimous, the procedure followed by the trustees and directors was insufficient to change the purposes of the Association. We disagree.

In addition to the powers articulated in the bylaws and articles of incorporation of the Association, the trust vested in the trustees all the powers provided by the laws of the State. Pursuant to 13–A M.R.S.A. § 802 (1981),[4] a corporation may amend its articles of incorporation. The procedure by which the articles may be amended is provided by 13–A M.R.S.A. § 805 (1981).[5] Pursuant to 13–A M.R.S.A. § 202 (1981),[6] a corporation

---

4. 13–A M.R.S.A. § 802 (1981) provides, in pertinent part:

   **1.** A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, if its articles of incorporation, as amended, contain only such provisions as might lawfully be contained in original articles of incorporation on the effective date of such amendment.

   **2.** In particular, and without limitation upon the general power of amendment granted by subsection 1, a corporation may amend its articles of incorporation so as:

   . . . .

   **B.** To enlarge, limit or otherwise change the business for which the corporation is organized; or to delete any specification in the articles of the business or businesses in which it will engage; . . . .

5. 13–A M.R.S.A. § 805 (1981) provides, in pertinent part:

   **1.** All amendments to the articles of incorporation, [except in instances not applicable to this case], shall be made by action of the directors and shareholders in accordance with the following procedure:

   **A.** The board of directors shall adopt a resolution setting forth the proposed amendment and directing that it be submitted to a vote at an annual or special meeting of the shareholders.

   **B.** Written notice setting forth the proposed amendment or a summary of changes to be effected thereby shall be given to each shareholder of record entitled to vote thereon in accordance with this Act relating to the giving of notice of meetings of shareholders.

   **C.** At such meeting a vote of the shareholders entitled to vote thereon shall be taken on the proposed amendment. The proposed

amendment shall be adopted upon receiving the affirmative vote of the holders of at least a majority of all outstanding shares entitled to vote thereon. . . .

   . . . .

   **5.** The articles of incorporation may be amended by written consent of all shareholders entitled to vote on such amendment, as provided by section 620, subsection 2; if such unanimous written consent is given, no resolution of the board of directors proposing the amendment is necessary.

6. 13–A M.R.S.A. § 202 (1981) provides, in pertinent part:

   **1.** Subject to any limitations contained in any provisions of this Act or in any other law, each corporation shall have power:

   . . . .

   **F.** To cease its corporate activities and surrender its corporate franchise;

   . . . .

   **I.** With respect to any property of any description, or interest therein, wherever situated, including, but not limited to, real property:

   . . . .

   (3) To sell, convey, encumber, mortgage, pledge, lease, exchange or otherwise dispose of all or any part of such property;

   **2.** The articles of incorporation of any corporation subject to this Act may limit the powers conferred by subsection 1, . . . .

   **3.** It shall not be necessary to set forth in the articles of incorporation any of the powers enumerated in this section; but unless expressly excluded by the articles or limited by statute, each corporation shall have all the powers enumerated in this section whether or not some or all of them are also enumerated in the articles.

has the power to convey all of its property unless the power is limited in the articles of incorporation. *Id.*

When analyzed pursuant to principles of corporate law, the Association properly amended its purposes on June 3, 1991, when the trustees unanimously voted to amend the purposes of the Association, as stated in the certificate of organization and bylaws. Because a corporation may amend its articles of incorporation to change the business for which it is organized pursuant to 13–A M.R.S.A. § 802(2)(B), this vote was within the power of the trustees and directors. Furthermore, the trustees followed the procedure outlined in 13–A M.R.S.A. § 805(5) in unanimously voting to amend the purposes of the Association.

██ The Association transferred all its assets to the Corporation on August 19, 1991 with no return of consideration. This action was taken following a unanimous vote of the trustees and was ratified by a vote of the directors. There is no merit to the Chapter's contention that the directors did not have the power to transfer the Association's assets because such power is not explicitly stated in the Association's bylaws. Indeed, the bylaws do not have to state that the directors have the power to convey all of the Association's property. 13–A M.R.S.A. § 202(3). Rather, the Association's power to convey all its property exists unless limited by the articles of incorporation, and in this case the articles of incorporation do not restrict this power. Therefore, we conclude that the Superior Court correctly determined that the Association acted within its authority in transferring all its property to the Corporation.

The entry is:

Judgment affirmed.

All concurring.