WILLIS B. CHILD, HARRIET CHILD CRYSLER, AND CHARLES S. CRYSLER *v.* CHARLES E. PINNEY, GUARDIAN OF LOUISA B. DRAKE. (Two Cases).

May Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed July 27, 1908.

*Equity—Master's Report—Evidence Before Master—When Considered on Appeal—Questions of Fact—Conclusions of Master—When Final.*

The Supreme Court cannot consider evidence before a master which is neither attached to his report nor made a part thereof; and sending up minutes of evidence neither incorporated in his report nor there referred to has no effect whatever.

Where the facts detailed by a master tend to cast no doubt on the validity of his conclusions, and the evidence before him cannot be considered to determine whether it supports his conclusions, because not made a part of his report, those conclusions must stand as facts.

APPEAL IN CHANCERY, two cases. Heard on the pleadings and master's joint report at the June Term, 1907, Addison County, *Taylor,* Chancellor. Decree dismissing the bills with costs. The orators appealed. The parties in each suit are the same.

The two deeds in question were executed by H. Emily Bowditch, who died November 2, 1899. The orator Willis B. Child is her nephew, and the oratrix Harriet Child Crysler is her niece, and those two are her next of kin and heirs at law. The orator Charles S. Crysler is the husband of said Harriet. Louisa B. Drake is a cousin of said H. Emily, and defendant Rollin L. Shaw was her nephew by marriage, and since this suit began has become the husband of said Louisa B.

The master reported that in June, 1899, said H. Emily Bowditch was afflicted with what proved to be a cancer; that

when she learned the nature of her disease she "was desirous and anxious that all arrangements and papers be made which were required to have the property she possessed go to the parties whom she wished to have it; and thereupon matters were talked over between her and Louisa B. Drake, and it was decided that the papers should be made so that the survivor should have all the property the other should own at her death." In pursuance of this arrangement, on Sept. 8, 1899, H. Emily Bowditch and Louisa B. Drake each executed and delivered to the other a warranty deed of certain real and personal estate in the town of Weybridge, Vermont, all of which, except about 60 acres of land owned by H. Emily, was owned by them in common. H. Emily's interest in said property was then worth about $5,000, and was all the property that she owned. In each deed, the usual covenants of warranty concluded with this clause: "Provided, nevertheless, that if I, the grantor, survive said grantee, shall be void and of no effect in law or equity, otherwise in full force and effect."

It is said deed from H. Emily that is sought to be set aside in one of the suits. It is found that "said deeds were made and delivered in exact accordance with the desires of" the parties thereto; that said H. Emily "was fully aware of the effect thereof, and knew perfectly well what would be the result of the execution and delivery of the deed signed by her"; that "she had given the matter full and fair consideration and executed the deed freely and of her own accord, without influence or suggestion from any one, and without any fraud, flattery, or imposition whatever"; that till the very last of October, 1899, she "was a capable, strong-minded business woman," and "to a large extent dominated and controlled the said Louisa B."; that after 1878 those two "lived together during all the time, occupying the same sleeping room, were very fond of each other, and almost inseparable"; that said H. Emily "cared more for her cousin and long time companion, Louisa B. Drake, than for any and all other persons," and had become so solicitous about her welfare that she desired her to have all of which the said H. Emily might die possessed; that during the last years of her life she did not have the same love and affection for the orators as she used to have. In October, 1899, the defendant, Charles E. Pin-

ney, was appointed guardian of the property of said Louisa B. Drake.

On September 8, 1899, and immediately after the execution and delivery of the two deeds above mentioned, said H. Emily Bowditch and Louisa B. Drake executed to, and subsequently delivered to Rollin L. Shaw, a warranty deed of certain mill property, with the machinery and appurtenances, in said Weybridge, that they owned in common, and which was included in the two deeds first above mentioned, and was worth $2,000; reserving to the grantors, and the survivor of them, the use and occupation of the premises during their lives and the life of the survivor.

This is the deed that is sought to be set aside by the other of said suits. In respect of this issue it is found that said Rollin L. Shaw had worked for said grantors for about thirteen years; that he managed their farm for them; "would hire and discharge help, market the products, and generally control and direct about the work on the farm, but at all times he was subject to the control and direction of" said grantors; that in 1892 said grantors moved onto said farm and both lived there till the death of said H. Emily; that said Shaw continued to live in the same house with said grantors and after 1895 boarded with them as part of their family; that he improved the farm and rendered faithful service to his employers, who "both became fond of him, and considered themselves under obligations to him for his long and faithful service"; that some time prior to Sept. 8, 1899, said Shaw and Louisa B. Drake became engaged to be married, which engagement was approved by said H. Emily; that this deed was intended as a gift to said Shaw as a reward, in addition to his wages, for the care and services that he had rendered the grantors for the previous thirteen years; that this gift was the result of conferences between said grantors and in accordance with the wishes of said H. Emily Bowditch, who was fully informed and knew the effect of the making and delivery of the deed, which was made without any fraud, flattery, imposition, or undue influence, and was the free act and deed of the grantors; that at the time the deed was executed, the grantors owed said Shaw $1,000 for wages; that he did not know anything about such deed till it was delivered to him.

*Charles S. Crysler,* and *Senter & Senter* for the orators.

The term "confidential and fiduciary relation" is a very broad one.  The relation and duties involved in it need not be legal, may be moral, social, or domestic; and applies to gifts, whether mere donations, or the effect of liberality based on antecedent favors or obligations.  2 Pomeroy Eq. Jur. §956; *Keith* v. *Kellam,* 35 Fed. 243; *Cheuvront* v. *Cheuvront,* 46 S. E. 233; *Rody* v. *Coleheuo,* 25 N. E. 77; *Thomas* v. *Whitney,* 57 N. E. 808; *Todd* v. *Groves,* 33 N. Y. 188; *Falk* v. *Turner,* 101 Mass. 494; *Taylor* v. *Taylor,* 49 U. S. 8 How. 183; 12 Law Ed. 1040; *Turner* v. *Turner,* 44 Mo. 535; *Garvin's Admr.* v. *Williams,* 44 Mo. 1, c. 469 and 470.

"The broad principle upon which the courts act in cases of this description is, that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom the confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with a person so trusting him.  *McParland* v. *Larkin,* 155 Ill. 84; Pomeroy Eq. Jur. §941; *Slack* v. *Reese,* 59 Atl. 450; *Hill* v. *Otterson,* 52 N. J. Eq. 528; *Coffey* v. *Sullivan,* 6 N. J. Eq. 49 Atl. 520; *Albert* v. *Hoenerly,* 61 Atl. 380; *Richman* v. *Meir,* 72 N. E. 1124; *Dowie* v. *Bristow,* 68 N. W. 56; *Richmond's Appeal,* 59 Conn. 226; *Pironi* v. *Corrigan,* 46 N. J. Eq. 100; *Gay* v. *Gillilan,* 92 Mo. 250; *Harvey* v. *Sullivan,* 46 Mo. 147; *Street* v. *Goss,* 62 Mo. 226; *Yosti* v. *Langhan,* 49 Mo. 594; *Cadwaller* v. *West,* 48 Mo. 483; *Meek* v. *Perry,* 36 Miss. 190; *Budwell* v. *Swank,* 84 Mo. 455; *Marx* v. *McGlynn,* 88 N. Y. 357; *Scofield* v. *Walker,* 58 Mich. 96.

Whether Shaw directly influenced Mrs. Bowditch is immaterial.  The rule has often been announced that where undue influence is used by another than the beneficiary, the beneficiary cannot retain the fruits thereof.  *Rankin* v. *Patton,* 65 Mo.; *Smith* v. *Erline,* 194 Ill. 184; *Van Valkenburg* v. *Van Valkenburg,* 90 Ind. 431; *Randolph* v. *Lamkin,* 90 Ky. 551; *Miller* v. *Simon,* 72 Mo. 669.

*Frank L. Fish,* and *Frank W. Tuttle* for the defendants.

It must appear affirmatively, that the master found facts without evidence, or against the evidence.   Where there is evidence tending to establish the facts found, neither the court of chancery nor the Supreme Court on appeal, will review the findings as to the weight to be given the testimony.   *Phelps & Phelps* v. *Root,* 78 Vt. 493; *Merriam* v. *Barton,* 14 Vt. 501; *Vt. & Can. R. R. Co.* v. *Vt. Cen. R. R. Co.,* 34 Vt. 65; *McDaniels* v. *Barbour,* 45 Vt. 460; *Rowan* v. *State Bank,* 45 Vt. 160; *Howard* v. *Scott,* 50 Vt. 48; *Waterman* v. *Buck,* 58 Vt. 519; *Soules* v. *Hall,* 73 Vt. 55.

WATSON, J.   The orators seek to have certain deeds set aside and cancelled on the grounds that the grantor was mentally incapable of executing them and that they were obtained from her through fraud and undue influence.   The special master found that the grantor at the time of the execution of the deeds was an "aggressive," "capable, strong minded intelligent business woman," "of sound mind and memory and capable of entering into a valid and binding contract"; that she was fully aware of the effect of the execution and delivery of the deeds, and knew perfectly what would be the result thereof; and that she had given the matter full and fair consideration and executed the deeds freely and of her own accord, without influence or suggestion from anyone and without any fraud, flattery, or imposition whatever.   Upon the special master's report, the Chancellor dismissed the orators' bills.   The only complaint made in the orators' brief on appeal to this Court seems to be that in the light of the distrusting scrutiny with which equity views transactions apparently favoring a fiduciary at the expense of the beneficiary, the special master should not have found that the making and execution of the deeds were untainted by fraud, undue influence, or other unconscionable conduct.   Even if the principle alluded to be applicable (and we do not decide that it is) the facts detailed by the master fully support his conclusions.   The evidence given before the master has not been attached to nor made a part of his report; and this Court cannot consider evidence not so reported by the master. Sending up minutes of evidence not incorporated in nor referred to in the master's report has no effect whatsoever. Since the facts detailed by the master tend to cast no doubt on the validity of

his conclusions and since this Court has no legal means of considering the evidence and determining whether or not it supports the master's conclusions, those conclusions must stand as facts.   The decree dismissing the bill with costs must, therefore, be affirmed.

*Decrees affirmed and causes remanded.*