NORTHFIELD NATIONAL BANK *v.* E. B. ELLIS GRANITE COMPANY AND TRUSTEES.

October Term, 1924.

Present:  WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 6, 1926.

*Mortgages—Value of Mortgaged Property—Burden of Proof— Effect of Foreclosure Proceedings on Obligations Secured by Mortgage—Title to Mortgaged Property After Foreclosure When Decree Has Become Absolute—"Premises"— Chose in Action Not Subject of Statutory Mortgage—Assignment of Chose in Action by Common Law Mortgage— Foreclosure—Immaterial Finding—Trustee Process—Money Deposited Under G. L. 5148.*

1.  Where a mortgagee seeks to recover an unsatisfied balance, after foreclosure proceedings, burden is upon him to show to what extent mortgaged property was insufficient to pay indebtedness.
2.  Where security is in hands of mortgagee, or his assignees, after final decree in foreclosure proceedings, burden of showing that such property is greater in value than amount of mortgage indebtedness is upon party making such claim.

3. Obligations secured by mortgage are not extinguished by fore-closure proceedings and decree, unless mortgaged property is sufficient for this purpose.

4. Quarry company's rights in freight rebate contract *held* to have been included in decree of foreclosure.

5. Word "premises" as used in foreclosure decree, *held* to include both real estate and contract rights.

6. Where there had been no redemption after foreclosure, and decree had become absolute, *held* that title to property had passed to owner of mortgage.

7. Quarry company's freight rebate contract with railroad company, *held* to be chose in action, and *not* subject of statutory chattel mortgage.

8. Inclusion in real estate mortgagee of all mortgagor's right, title, and interest, under and to freight rebate contract, *held* to con-stitute assignment by way of mortgage, being equivalent of common law mortgage, and to be subject to foreclosure by bill in chancery.

9. Where rights of quarry company to freight rebate contract had been included in real estate mortgage, and title to such con-tract and to the real estate had passed by decree of fore-closure, when absolute, to mortgagee's assignee, finding made by commissioner, excepted to as wholly unsupported by evi-dence and not legally inferable therefrom, that a large amount was found due in foreclosure and accounting litigation and was still due owner of unredeemed mortgage, was immaterial.

10. Money deposited in name of chancellor under provision of V. S. 3822 (G. L. 5148) is in custody of law, and cannot be recov-ered or paid to anyone until order of chancellor to that effect is made, hence is not subject to trustee process.

ACTION OF DEBT on judgment. Judgment against principal defendant. Disclosures of no funds filed by each of several trus-tees, and Woodbury Granite Company entered as claimant to certain money on deposit in bank. Heard by court on commis-sioner's report and plaintiff's exceptions thereto. September Term, 1924, Washington County, *Willcox*, J., presiding. Judg-ment *pro forma* overruling plaintiff's exceptions to commission-er's report, that trustees be discharged with costs, and that bank deposit in controversy be adjudged the property of claimant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*J. Ward Carver* and *Edward H. Deavitt* for the plaintiff.

The usual effect of decree of foreclosure is to pass real estate over to mortgagee in payment and extinguishment of mortgage debt.  *Lovell* v. *Leland,* 3 Vt. 581; *Paris* v. *Hulett,* 26 Vt. 308; *Calkins* v. *Clement,* 54 Vt. 635; *Noyes* v. *Rockwood,* 56 Vt. 647.

Where debt is secured by real estate mortgage and also lien on personal property, foreclosure of mortgage on real estate releases lien on personal property.  *Calkins* v. *Clement, supra; Waite* v. *Stanley,* 88 Vt. 407.

Rights of plaintiff against trustees are to be determined on equitable and not strictly legal grounds, as they exist at time of trial.  *Northfield Trust Co.* v. *Cutting & Trustee,* 95 Vt. 343.

*William B. C. Stickney* and *Dutton & Morse* for trustees and claimant.

Mortgagor, having had an opportunity to protect its rights, if error had been made by special master or the chancellor, in Supreme Court, advantage could not be taken by mortgagor because of its failure to be heard, much less by a third party. *Findlay* v. *Longe,* 81 Vt. 523; *Sherman & Adams* v. *Windsor Mfg. Co.,* 57 Vt. 57; *Pilloid* v. *Angola Ry. & Pwr. Co.* (Ind.), 91 N. E. 828, 830; *Kiernan et al.* v. *Jersey City* (N. J.), 31 L. R. A. (N. S.) 1023, 1031; *Strout* v. *Lye,* 103 U. S. 66, 26 U. S. (L. ed.) 428; *Ruff* v. *Doty,* 26 S. C. 173, 4 A. S. R. 709; *Rigg* v. *Cook,* 4 Gil. (Ill.) 336, 46 A. D. 462, 471; *Blythe* v. *Richards,* 10 S. & R. (Penn.) 261, 13 A. D. 672; 19 R. C. L. 558; *Redden* v. *Metzger,* 46 Kan. 285, 26 A. S. R. 97.

Mortgage to claimant's assignor, so far as it relates to personal property therein described, was a common law mortgage, and not sworn to by mortgagee in accordance with provisions of law relating to statutory chattel mortages.  *Howard* v. *Witters,* 60 Vt. 578; *Thompson, Trustee* v. *Fairbanks,* 75 Vt. 361.

Freight rebate contract was not capable of being made subject to statutory chattel mortgage.  *Woodward* v. *Laporte, Tr. & Clt.,* 70 Vt. 399.

Rebate contract might be assigned as security in mortgage of realty and other personalty; and such assignment amounted to a common law mortgage of the contract, subject to foreclosure with mortgage upon the realty and not capable of foreclosure in

any other way. *Whiting* v. *Adams,* 66 Vt. 679; *Blodgett* v.
*Blodgett,* 48 Vt. 32; *Thompson, Trustee* v. *Fairbanks, supra;*
*Charter* v. *Stevens,* 3 Denio 33, 45 A. D. 444 and note at p. 446;
3 Pomeroy Eq. Jur., § 1230, and note; 2 Jones on Mortgages
(3rd ed.), § 1443.

Word "premises" in decree included everything described
in the premises of the mortgage, *Whiting* v. *Adams, supra; Blod-
gett* v. *Blodgett, supra; Thompson, Tr.* v. *Fairbanks, supra;*
*Cummings* v. *Dearborn,* 56 Vt. 441.

After foreclosure and expiration of time of redemption,
mortgagor not having redeemed, property became vested abso-
lutely in mortgagee, discharged of any legal or equitable claim
or interest of the mortgagor, and the value of the mortgaged
property thereupon became immaterial, *Pierson* v. *Catlin,* 18 Vt.
77, 84; *Pelton* v. *Mott,* 11 Vt. 148; 23 Cyc. 1116, 1117; 2 Daniell's
Ch. Pl. & Pr. (5th ed.), § 1031; 21 C. J. 692; *Dubuque* v. *Stitch,*
16 Wash. 641, 48 Pac. 344.

BUTLER, J.   This is an action of debt on judgment. Each
of the trustees filed a written disclosure denying, in effect, that
it had in its hands or possession, any goods, effects or credit
belonging to the defendant, either at the time the writ was served
or subsequently thereto.   The Woodbury Granite Company also
filed a claim to all goods, effects, and credits in the hands of the
other trustees.   The plaintiff had judgment against the defend-
ant, and a commissioner was appointed to hear and report the
facts and his decision, concerning the liability of the several
trustees.   Upon the report of the commissioner a *pro forma*
judgment was rendered, discharging each of the trustees, and
adjudging that the funds in controversy, except the sum of $633
on deposit in the National White River Bank, were the property
of the claimants.   The question for review is raised by excep-
tions to certain of the findings and to the judgment.

In the commissioner's report, the following facts were
found:  The E. B. Ellis Granite Company, a Vermont corpora-
tion, owned certain real estate in Bethel, in this State, upon
which was a granite quarry.   It was situated at some distance
from a railroad, and, in order to facilitate the operation of its
business, that company, on May 4, 1904, entered into an agree-
ment with the Central Vermont Railway Company that a corpora-
tion to be known as the Bethel Granite Railway Company should

be formed to construct and operate a railway track from the main line of the Central Vermont Railway to the Ellis quarry. The stock of the Bethel Granite Railway Company was, and is, held by the Central Vermont Railway Company. The funds for the construction of the railway were to be advanced by the Ellis Granite Company, and that company was to furnish the freight to be hauled over it. Freight was to be hauled at the rate of 50 cents a ton, and there was to be a rebate on such figures by the Central Vermont Railway Company of 20 cents a ton until the funds advanced by the Ellis Granite Company were made up to it.

The Bethel Granite Railway Company was incorporated, the road was built, the Ellis Granite Company advanced $36,615.00 to build the railway, and there accrued as rebates, under the agreement, from January, 1906, to January, 1913, the sum of $21,296.81 which was paid by the Central Vermont Railway Company to the Ellis Granite Company.

On July 24, 1905, the E. B. Ellis Granite Company sold, mortgaged, and assigned to the Thompson-Starrett Company, its successors and assigns for the purpose of securing a loan of $200,000.00, among other property including the quarry property, and rights, the following:

"Also all right, title, interest and benefit, under and to a certain contract, dated May 4, 1904, by and between the Central Vermont Railway Company and the E. B. Ellis Granite Company relative to the construction of the railroad at Bethel, Vermont, also all the right, title, interest and benefit under and to all other leases, agreements, etc., made by and between the Central Vermont Railway Company and the E. B. Ellis Granite Company."

In 1909, the Thompson-Starrett Company brought a petition to foreclose the mortgage deed of the Ellis Granite Company, and on December 1, 1912, a decree of foreclosure was entered. The time of redemption expired and the land and premises covered by the mortgage were not redeemed.

On February 24, 1910, for valuable consideration, the Thompson-Starrett Company sold, assigned, granted, and conveyed to the Woodbury Granite Company, its successors and assigns, the mortgage deed above mentioned, together with the premises, personal property, rights, and interest therein de-

scribed together with the original debt to secure which the mortgage was given and all evidence thereof.

The Woodbury Granite Company owned a quarry adjacent to, and beyond the quarry formerly owned by the E. B. Ellis Granite Company, and until the Bethel Granite Railway was built, had no railroad facilities, but since the building of the railway, it had been able to ship its granite by rail from its quarries.

After January, 1913, the Central Vermont Railway Company paid the rebates on freight hauled over the Bethel Granite Railway to the Woodbury Granite Company, because the Central Vermont Railway Company was informed that the Woodbury Granite Company owned the contract and claimed the balance of payments under it. From February, 1913 to December, 1914, rebates amounting to $10,767.78 were thus paid. From November, 1914, to November, 1915, the amount of $3536.50 was paid. On December 19, 1921, the balance of the funds advanced by the Ellis Granite Company of $1,013.91, which accrued by hauling of freight between November, 1915, and August, 1916, was paid in the refund settlement between the Woodbury Granite Company and the Central Vermont Railway Company. All shipments made over the Bethel Granite Railway after May, 1915, were made by the Woodbury Granite Company of granite that it had quarried from its own quarries. After service of the writ in the case only about 5% of the granite shipped over the Bethel Granite Railway by the Woodbury Granite Company came from the quarry formerly owned by the Ellis Granite Company.

During the foreclosure proceedings brought by the Thompson-Starrett Company against the E. B. Ellis Granite Company, an accounting was had to determine the sum due under the mortgage, and in the specifications in offset filed by the latter company, appeared the sum of $26,867.38 then due from the Central Vermont Railway Company by reason of the contract of May 4, 1904, which sum the Ellis Granite Company claimed to be a part of the security for the mortgage in question.

In the foreclosure and accounting, there was left a large sum still due and owing from the E. B. Ellis Granite Company to the Thompson-Starrett Company which upon the assignment of the mortgage became the property of the Woodbury Granite Company.

The Bethel Granite Railway Company was formed, apparently for the purpose of holding title to the track built under the agreement of May 4, 1904. It did not appear that it ever received or disbursed any funds. All payments for freight transported over it were made to the Central Vermont Railway Company. The Bethel Granite Railway Company was not a party to the contract between the Central Vermont Railway Company and the Ellis Granite Company.

The National White River Bank is a banking institution at Bethel. In building the Bethel Granite Railway, it became necessary to institute condemnation proceedings, in order to obtain certain land for its right of way. This land was owned by the Ellis Granite Company. An award was made of $633. The land in question was included in that mortgaged by the Ellis Granite Company to the Thompson-Starrett Company. The Bethel Granite Railway Company, in December, 1907, instituted proceedings, and as the result, the amount of the award was ordered by the chancellor to be deposited in the National White River Bank. The deposit was made, and is in the name of the chancellor, and by the terms of the order is held subject to his direction. No further order has been made concerning the deposit. The Thompson-Starrett Company assigned its interest therein to the Woodbury Granite Company, and notice was given to the Central Vermont Railway Company. The assignment was before service of the trustee process in this case.

The plaintiff claims that the effect of the foreclosure proceedings brought by the Thompson-Starrett Company against the Ellis Granite Company was to pass title of the real estate to the mortgagee, thus extinguishing the debt so that the claim against the Central Vermont Railway Company remained the property of the Ellis Granite Company, free from all liens, and was therefore reached by the trustee process in this case.

These foreclosure proceedings involved an accounting, to determine the amount due under the mortgage. It appears from the record in those proceedings, which are an exhibit in this case, that the Ellis Granite Company filed a lengthy specification, in which the following appears as a credit item:

"Balance of equity in Railroad Contract. Part of the security of the mortgage in question * * * * * * $24,671.67."

A decree for the plaintiff therein was entered, adjudging

the mortgaged property to be insufficient security, and providing for a short time of redemption. The defendant therein appealed, and after hearing in Supreme Court the decree was affirmed, and the cause remanded with direction that a new time for redemption be fixed. See 86 Vt. 282, 84 Atl. 1017. Upon remand, a final decree was entered for the Thompson-Starrett Company, reciting the fact of the mortgage, describing the property and rights covered by it, fixing a time for redemption, and stating that "the said E. B. Ellis Granite Company and all persons claiming under it, in default of making any of these payments herein and hereby ordered and decreed to be made, shall be foreclosed and forever barred from all equity of redemption in the premises." As has been said the time expired, and there was no redemption.

The plaintiff excepted to the findings by the Commissioner that:

"In the foreclosure and accounting litigation between the E. B. Ellis Granite Company and the Thompson-Starrett Company, there was left a large sum still due and owing from the E. B. Ellis Granite Company to the Thompson-Starrett Company, which upon assignment of the mortgage became the property of the Woodbury Granite Company * * * *. This decree has not been redeemed by the E. B. Ellis Granite Company and a large amount is still due to the owner of the unredeemed mortgage."

The grounds for these exceptions are that such findings are wholly unsupported by the evidence, and are not legally inferable therefrom.

The report of the master in the foreclosure case, which is an exhibit, states that the witnesses called by the plaintiff in that proceeding, testified that the value of the property was about $60,000. Those of the defendant placed the value at between $200,000 and $300,000. That, viewing the property, as a living, running institution in the hands of competent granite manufacturers, quarrymen, and contractors, having the money and credit to run the plant and ability to obtain contracts, the estimates of the defendant's witnesses were correct. But in view of the fact that the sheds were closed, the machinery idle, the quarry littered, the organization disbanded, no contracts in sight, and the plant to be sold on the market to the highest bidder, the chances were against realizing much more than the

estimate of the plaintiff's witnesses. The defendant excepted to this finding on the ground that it was evasive, uncertain, and insufficient, but the opinion in the case (86 Vt. 282, at p. 294, 84 Atl. 1017, 1022), states that: ''We think the report is sufficiently direct and certain to afford a guide to the chancellor's judgment in fixing the time of redemption.''

In reply to a request of the defendant that the master should find the balance, earned and unearned, under the rebate agreement with the Central Vermont Railway Company, the master stated:

> ''My attention is called to this matter for the first time by the foregoing request and I am unable to find or recall any evidence on the subject and therefore make no report or finding therein.''

The plaintiff claims that the findings of the master in the foreclosure case established only the fact that the real estate covered by the mortgage was worth less than the mortgage debt; that there was no adjudication so far as the value of the rebate contract was concerned; and that there was no determination of value for the purpose of establishing a deficiency on which an action might be taken to recover such deficiency.

It can hardly be claimed that any determinative action was taken in the foreclosure proceedings with respect to the rebate contract. As we have seen, the specifications filed by the Ellis Granite Company contained an item respecting it, but it was not noticed by the master in his preliminary report, where the amount due the petitioner, for which the decree was finally entered, was found.

A requested finding with regard to this contract was refused, because of lack of evidence upon the point, and it further appears that a motion to recommit was filed, and an exception to the findings as made was taken, but both the motion and exception were overruled. The most that can be claimed for this showing is that the Ellis Company conclusively recognized the right of the Thompson-Starrett Company to all benefits accruing under the contract; but that it failed to obtain a finding with regard to it, because of its neglect to introduce evidence upon the point.

The findings and decree fixing the time for redemption clearly show that the value of the mortgaged real estate was not

sufficient to pay the debt; and it is equally apparent that the findings concerning the value of the property are not such as to constitute the basis for a deficiency judgment, and that such was not the purpose of the hearing but only that of fixing the time of redemption.

The right of the claimant to the benefit of the rebate contract depended, therefore, upon the amount remaining unpaid on the indebtedness of the Ellis Granite Company after applying the value of the real estate and other securities embraced in the foreclosure proceedings, and the question was open for hearing and determination in the present case, because, to the extent that the obligation was unsatisfied, the rebates could be retained by this claimant.

[1, 2] Where a mortgagee seeks to recover an unsatisfied balance, after foreclosure proceedings, the burden is upon him to show to what extent the mortgaged property was insufficient to pay the indebtedness. But where, as in this case, the security is in the hands of the mortgagee, or his assignee, after final decree, the burden of showing that such property is greater in value than the amount of the mortgage indebtedness logically falls upon the party making such claim.

In the instant case, the plaintiff made no attempt to show that the indebtedness of the Ellis Granite Company was satisfied by the real estate and other securities. Its failure to sustain the burden on this point left it without legal claim to the benefits or any part thereof, under the rebate contract. The exception to the commissioner's report does not avail the plaintiff.

[3] The report of the commissioner clearly shows that the claimant, the Woodbury Granite Company succeeded to all the rights of the Ellis Granite Company in the rebate contract of May 4, 1904, with the Central Vermont Railway Company, through the assignments from the Ellis Granite Company to the Thompson-Starrett Company, and from the Thompson-Starrett Company to the claimant. This being the situation, unless the obligations of the Ellis Granite Company, to secure the payment of which the rebate contract and other items of property were pledged to the Thompson-Starrett Company were discharged and extinguished by the operation of the decree and the failure of the Ellis Granite Company to redeem, the rebate contract belonged to the claimant by virtue of the assignments above recited. Obligations secured by mortgage are not extinguished by fore-

closure proceedings and decree, unless the mortgaged property is sufficient for this purpose. *Calkins* v. *Clement*, 54 Vt. 635; *Paris* v. *Hulett*, 26 Vt. 308; *Lowell* v. *Leland*, 3 Vt. 581; *Waite* v. *Stanley*, 88 Vt. 407, 92 Atl. 633, L. R. A. 1916C, 886.

[4-6] . That the rebate contract was included in the decree of foreclosure is beyond question. That decree recites the property mortgaged, the real estate, and other items, and the rights under the contract with the Central Vermont Railway Company. It provides that in default of payment the Ellis Granite Company shall be "foreclosed and barred from all equity in the premises." The word premises while it often means land, is equally well adapted to designate the interest or estate intended to be conveyed. *Smith, Admr.* v. *Pollard*, 19 Vt. 272, 277; *Cummings* v. *Dearborn*, 56 Vt. 441, 443; *Deavitt* v. *Washington County*, 75 Vt. 156, 161, 53 Atl. 563. We think that the word "premises" as used in the decree of foreclosure refers to the mortgaged property, both real estate and contract rights. There having been no redemption, and the decree having become absolute, title to the property passed to the owner of the mortgage. *Calkins* v. *Clement, supra; Paris* v. *Hulett, supra; Lowell* v. *Leland, supra; Waite* v. *Stanley, supra.*

This is not the case of a debt secured by mortgage on real estate and also by a chattel mortgage, where the former is foreclosed, and the decree, when absolute, operates as an extinguishment of the debt, thus discharging the mortgaged personalty from the lien as in *Calkins* v. *Clement,* 54 Vt. 635. Here all the property was included in the same mortgage and the same foreclosure and the decree became absolute as to all of it. It became, therefore, the property of the Woodbury Granite Company, the assignee of the mortgage.

[7, 8] The contract with the Central Vermont Railway Company was a chose in action and so not property that might be mortgaged by a statutory chattel mortgage. *Woodward* v. *Laporte,* 70 Vt. 399, 403, 41 Atl. 443. The mortgage itself was not executed as a chattel mortgage, in that there was no affidavit attached to it as the statute requires. It was, so far as the rebate contract was concerned, an assignment by way of mortgage, see *Woodward* v. *Laporte, supra,* pp. 401, 402. It was the equivalent of a common law mortgage. *Whiting* v. *Adams,* 66 Vt. 679, 30 Atl. 32, 25 L. R. A. 599, 44 A. S. R. 875; *Thompson, Trustee* v. *Fairbanks,* 75 Vt. 361, 56 Atl. 11, 104 A. S. R. 899. It was

subject to foreclosure by a bill in chancery.    See *Whiting* v.
*Adams, supra.*

[9]    It follows, therefore, that the finding of the commis-
sioner, with regard to the sum due and owing, was immaterial
because title to the rebate contract passed by the decree of fore-
closure, when absolute, together with the title to the real estate
to the Woodbury Granite Company, as assignee of the mortgage.

[10]    The circumstances under which the deposit in the
National White River Bank was made have already been de-
tailed.    The claim of the Woodbury Granite Company with re-
spect to this fund was not allowed.    The deposit having been
made in the name of the chancellor under the provision of V. S.
3822 (G. L. 5148) is in the custody of the law, and cannot be
recovered or paid to anyone until an order of the chancellor to
that effect is made.    *Haswell* v. *Farmers & Mechanics Bank*, 26
Vt. 100, 104.    In the circumstances, neither the National White
River Bank nor the Bethel Granite Company was chargeable as
trustee in this action because of this deposit.

As has been pointed out, with regard to the rebate contract,
the plaintiff failed to make such a showing as to the status of the
indebtedness against the Ellis Granite Company, as entitled it to
the possession of this deposit.

The plaintiff excepted to the finding by the commissioner
that the E. B. Ellis Granite Company acquiesced in the pay-
ment of rebates by the Central Vermont Railway Company to
the Woodbury Granite Company from February, 1913, to May,
1914, on the ground that the same is not supported by the evi-
dence.    The claim is that the payments made during this period
comprise the sum for which the Woodbury Granite Company
should be held as trustee.    The precise finding was that this
action was acquiesced in, so far as appears, by everyone, and no
protest was made, unless the service of the trustee process can
be treated as such.    But there is no question of acquiescence
here.    The decree of foreclosure had become absolute, the Central
Vermont Railway Company had been notified, and, as has been
pointed out, the title to the rebate contract had passed to the
claimant, as assignee of the mortgage.

The plaintiff also excepted to the finding of the commis-
sioner that the Thompson-Starrett Company commenced the
foreclosure proceedings for the benefit of the Woodbury Granite
Company, for that the Thompson-Starrett Company commenced

the foreclosure proceedings on its own account and that the Woodbury Granite Company purchased *pendente lite*. This all may be, and yet the legal situation is not changed. At the time that the decree became absolute, the Woodbury Granite Company became the holder of the title to the property mortgaged, and whether the rights under the mortgage were purchased by it before or pending the foreclosure is not material here.

· What has been said heretofore renders it unnecessary to consider the other exceptions to the report.

*Judgment affirmed.*