Arbuckle *v.* Hawks.

## WILLIAM ARBUCKLE *v.* REUBEN HAWKS.

Where the plaintiff claimed to recover payment from the defendant for services rendered a third person, and it appeared, that the defendant, previous to the rendition of the services, promised to be responsible for the amount, and the plaintiff supposed he was working for the defendant, and charged his services to the defendant, it was held, that the undertaking of the defendant was original, and not collateral, and that he was liable to the plaintiff for the amount of his account.

A. agreed to sell to B. a piece of land for twenty five dollars, and B. gave his note for that sum, and took possession of the land, and received from A. a contract in writing, that he would deed, if the note were paid, according to its tenor. The note not having been paid at maturity, A. brought ejectment against B. and recovered possession of the land. And it was held, that, having thus elected to rescind the contract, he could not subsequently enforce payment of the note.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported that there was due from the defendant to the plaintiff $34,55, and that the facts were substantially as follows :

In 1838 one Gilman T. Eaton, a son-in-law of the defendant, came to live with the defendant and manage his farm, under an agreement, that he should pay the taxes, and have half the produce and the defendant informed the plaintiff of the agreement, and told him, that if he and Eaton had any deal, he must look to Eaton for the pay. Eaton did call upon the plaintiff for labor and services

and the plaintiff refused to work for him, without having the defendant's responsibility for payment, and saw the defendant, who told him to go to work, and he would be responsible for what work he did, that it should make no difference, that Eaton was going to build a saw mill for him, and a house for himself, and that what he did on the house and mill he might charge to Eaton, but it should make no difference in settlement,—that he expected to pay for it, but he wanted the book to show, as between him and Eaton. The plaintiff accordingly performed labor, and charged the work upon the farm to the defendant, and the work upon the house and mill to Eaton; and settlements were had between the parties from time to time, in which the defendant participated. And the auditor reported, that the plaintiff expected to be paid by the defendant, and supposed he was working for him, and that the services were properly chargeable to the defendant.

The county court, January Adjourned Term, 1847,—REDFIELD, J., presiding,—accepted the report and rendered judgment for the plaintiff for the balance found due by the auditor. Exceptions by defendant.

At the April Term, 1846, the defendant filed two pleas in offset, —the first of which was in debt upon a judgment in ejectment, rendered by Washington county court, April Term, 1845, for one cent damages and $27,25 costs, and $1,99, balance of officers' fees; the second count was in assumpsit upon a promissory note for twenty five dollars, dated October 2, 1838, signed by the plaintiff, and payable to the defendant in two years from date with interest. Replication, the general issue, and trial by the court, May Term, 1847, —DAVIS, J., presiding.

On trial it was admitted by the defendant, that the note described in the second plea was given for the land, for the possession of which the judgment in ejectment was rendered, and that, by a written contract between the plaintiff and defendant, the defendant had agreed to convey the land to the plaintiff on payment of the note, and that the defendant, having obtained his judgment in ejectment, had taken possession of the land and still held the same. The plaintiff farther proved, that he had offered, several times after the note became due, to pay the note, and requested a deed of the land; that the defendant had refused to deed, for the reason that the plain-

tiff had not paid the note, when it became due; and that the plaintiff, while in possession of the land under the contract, made valuable improvements, and erected buildings thereon, to the value of about one hundred dollars.

The court decided, that the amount of the note described in the second plea, and also the several sums specified in the first plea, must be allowed in offset to the sum, which had been adjudged due to the plaintiff upon book account, and rendered judgment for the defendant to recover the balance of said sums.     Exceptions by plaintiff.

*O. H. Smith* for defendant.

1. It appears, that the plaintiff's account was for work done for Eaton, at Eaton's request, and for which Eaton was liable and made payments from time to time.   The defendant's liability, if he ever assumed any, was collateral to that of Eaton, and could not be proved by parol evidence.   Rev. St. 61, § 1.   1 Greenl. Ev. 267. *Sargeant* v. *Pettibone*, 1 Aik. 355.   *Skinner et al.* v. *Conant*, 2 Vt. 453.   *Matson et al.* v. *Wharham*, 2 T. R. 80.   *Smith* v. *Ide*, 3 Vt. 290.   *Anderson* v. *Davis*, 9 Vt. 136.

2. The action of ejectment and the judgment therein could have no effect upon the note in question, nor upon the written contract. The plaintiff has always had the right to pay the note and have a deed of the land.

*Heaton & Reed* for plaintiff.

1. The defendant cannot collect the note described in his second plea.   As the plaintiff did not pay the note at maturity, he lost all rights under the contract; and it was optional with the defendant, whether to accept payment of the note and execute the deed, or re-scind the contract;—he could not do both.   *Gillet* v. *Maynard*, 5 Johns. 85.   *Raymond et al.* v. *Bearnard*, 12 Johns. 274.   And if a contract be once rescinded, the party rescinding cannot restore himself to his former legal rights.

2. The facts reported in reference to the book account do not show a case within the statute of frauds.   The defendant was the sole party liable from the first; the credit was given to him alone.

The opinion of the court was delivered by

REDFIELD, J. The only question made in regard to the claim upon the part of the plaintiff is, whether the undertaking of the defendant was *original,* or *collateral.* This may readily be determined by the inquiry, whether the plaintiff ever gave credit to Eaton, so that he became liable. We think he did not. We think it was a matter well understood by the three, that the credit was given solely to the defendant, and that he was *originally* liable. The judgment upon the report of the auditor was correct.

There is no controversy, but that the matter claimed in the first plea in bar is one upon which the defendant is entitled to insist in this action.

But the claim set up in the second plea seems to us, upon the facts found, to be one, which the defendant cannot maintain. In order to entitle the plaintiff to claim any benefit of the bond to convey the land, he was to pay the note according to its tenor. The note was payable in two years, and became due October 3, 1840, and before the action of ejectment was brought by the defendant. The plaintiff having failed to perform the contract on his part, this gave the defendant, in law, an election to rescind the contract *in toto,* and reclaim the land, or to collect the price; but he could not do both; and having made his election, he is bound by it. The defendant, by bringing the action of ejectment and taking possession of the land, effectually rescinded the contract. And a contract once rescinded cannot be restored, except by consent of both parties. If the defendant chose to pursue the plaintiff for the price of the land, he should have done that; or he might possibly have claimed a lien upon the land for the purchase money, and still have collected the price of the land; but when he takes possession of the land, *as owner,* all claim upon the note is gone.

Judgment reversed, and case remanded for a new trial upon the second plea in offset.