JONES *v.* BOWLING.

1. Land Contracts—Forfeiture—Waiver.

   A land contract which gave to the vendee the right of pos-
   session provided that, upon the vendee's default, the vendor
   might declare the contract void, treat previous payments as
   stipulated rents, and take immediate possession of the prem-
   ises. After default, the vendor, at the vendee's request, con-
   sented to delay for a time the enforcement of the contract, in
   order to give the vendee an opportunity to sell the property
   and pay the debt, and accepted some small payments from
   the vendee. *Held,* that the vendee's contention that the ven-
   dor thereby waived the right to declare a forfeiture, and
   elected to treat the vendee as a tenant, so as to entitle him to
   notice before his tenancy could be terminated, was inequita-
   ble.

2. Same—Foreclosure—Defenses—Alienation of Title.

   The vendor in a land contract conveyed to a third person,
   subject to the contract. Thereafter he took a reconveyance,
   of which he gave the vendee notice, and, upon the latter's
   default, sought to foreclose the contract. The vendee had
   never placed his failure to pay on the ground that the vendor
   had alienated his title. *Held,* that the fact could not be
   urged in defense of the suit.

3. Same—How Differ from Mortgages—Procedure.

   Proceedings to foreclose land contracts are not subject to the
   limitations imposed by statute with respect to the foreclosure
   of mortgages, inasmuch as the relations of the complain-
   ants in the respective proceedings to the subject-matter are
   entirely different; the mortgagee having an equitable title,
   which can be expanded into a legal title only in the man-
   ner prescribed by law, and the vendor having himself the
   legal title, subject to divestiture upon the vendee's perform-
   ing the obligation which the retention of the title was in-
   tended to secure.

Appeal from Wayne; Donovan, J.   Submitted April 21,
1898.   Decided June 7, 1898.

Bill by Lewis H. Jones and Ida B. Jones against

Jennie T. Bowling and Stephen J. Bowling to foreclose a land contract. From a decree for complainants, defendants appeal. Affirmed.

*C. E. Warner*, for complainants.

*E. H. Sellers (John D. Conely* and *Cassius Hollenbeck*, of counsel), for defendants.

MOORE, J. January 3, 1898, complainants filed a bill for the foreclosure of a vendor's lien under a land contract. February 18, 1898, a decree was entered in which it was found that $10,802 was due, and directing the defendants to pay the same on or before March 21, 1898. In case of nonpayment by that date, sale might be made by a circuit court commissioner at any time thereafter. The decree also provided that Mrs. Bowling should be liable personally for any deficiency. It gave the possession of the premises to defendants for 30 days from the date of the decree. From then until May 1, 1898, they were allowed to occupy the premises upon paying $50 monthly in advance as rental, to be applied upon the amount found due and costs. If this rental was not paid, the decree provided for the appointment of a receiver to take possession of the property. From this decree, defendants appeal.

The land contract was in the usual form, except in one or two particulars. It contained these provisions:

" The parties hereto further mutually agree that the said party of the second part shall have possession of said premises on and after this date, while he shall not be in default on his part in carrying out the terms hereof, taking and holding such possession hereunder; and he shall keep the same in as good condition as they are at the date hereof, until the said sum shall be paid as aforesaid; and if said party of the second part shall fail to perform this contract, or any part of the same, said parties of the first part shall, immediately after such failure, have a right to declare the same void, and retain whatever may have been paid hereon, and all improvements that may have been made on said premises, as stipulated rents for the use

117 MICH.—19.

thereof, and may consider and treat the party of the second part as their tenant holding over without permission, and may take immediate possession of the premises, and remove the party of the second part therefrom; that time shall be considered of the essence of this contract; and that this contract may be assigned only after consent of said parties of the first part in writing has been indorsed hereon. And it is agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties."

The record shows that, when the bill was filed, $10,000 of the principal sum was due upon the contract, and some interest and taxes. After the principal was due, defendants said that, if given a little time, they thought they could sell the property and pay the debt. The bill was not at once filed, and some small payments were made after the principal came due. It is urged that the receipt of these payments waived a forfeiture, and made the vendees tenants, entitled to notice before their tenancy could be terminated.

All of the principal was due July 1, 1897. Mr. Jones assured Mr. Bowling that he wanted the money due, but had no desire to be hard upon the defendants. Mr. Bowling thought he could sell the property, if given a little time, and said that, if the payment could be delayed until the 1st of December, if the property was not sold, or some arrangement made, he would make no trouble, but would give a quitclaim deed. During this time he was to pay $50 a week until the interest was paid up, and he made two or three weekly payments. What was done was not intended by the parties as a new contract, but was intended simply as a delay in enforcing the contract, which would be in the interest of the defendants. We do not think they can now be heard to say, when they have failed to carry out the arrangement, that it changed the terms of the contract.

After the making of the contract, Mr. Jones conveyed the property to his father. The deed was made subject to this contract. It is now said that, because complainant

had alienated his title, he cannot maintain this action. The record, however, shows that, long before this bill was filed, the father reconveyed the property to Mr. Jones, and that Mr. Bowling was notified of this. Defendants never put their failure to pay what was due upon any such ground.

It is insisted by defendants that the land contract is an equitable mortgage, and that the proceeding is one to foreclose an equitable mortgage, and should be governed by the same rules as the foreclosure of mortgages in chancery. It is said that one year should elapse after the bill is filed before the sale; that notice of sale should be published six weeks; and that the vendee, like the mortgagor, should be entitled to the possession of the property until the sale of the property is confirmed. Counsel ask, ''Why should not the proceeding to foreclose a land contract be the same as to foreclose a mortgage?'' Our attention is not called by counsel on either side to any authorities which are conclusive of the questions involved here. It may be said, however, that the legal title to the land remains in the mortgagor, while the equitable title is in the mortgagee, who cannot acquire the legal title except in the manner prescribed by law. In the case of a land contract, the legal title remains in the grantor, while the equitable title is in the vendee. The legal title cannot be acquired by the vendee until he has performed the conditions of the contract. In discussing the question of liens, it is said: '' A distinction exists between the lien of the grantor after conveyance, and the interest of the vendor before conveyance.'' 3 Pom. Eq. Jur. § 1260, states it as follows:

''There is a plain distinction between the lien of the grantor after conveyance, and the interest of the vendor before conveyance. The former is not a legal estate, but is a mere equitable charge on the land. It is not even, in strictness, an equitable lien, until declared and established by judicial decree. In the latter, although possession may have been delivered to the vendee, and although, under the doctrine of conversion, the vendee may have

acquired an equitable estate, yet the vendor retains the legal title; and the vendee cannot prejudice that legal title, or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of such title was intended to secure, namely, by paying the price according to the terms of the contract. To call this complete legal title a lien is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale, before conveyance, the vendor has the legal title, and has no need of any lien. His title is a more efficient security, since the vendee cannot defeat it by any act or transfer, even to or with a *bona fide* purchaser."

The vendor, before conveyance, holds the legal title as security for the performance of the vendee's obligation, as trustee, it is true, for the vendee, subject to his performing his agreement.

As we have seen, there is a very marked difference between the interests held in the real estate by a vendor under a land contract and a mortgagee; and we think this difference will answer the question why a land contract should not be foreclosed the same as a mortgage. In the case of a mortgage, the mortgagee knows the limitations put upon his possession by the statute. There is no such limitation placed upon the vendors in land contracts. Unless the vendee is given the right of possession by the contract, he is not entitled to it. *Druse* v. *Wheeler*, 22 Mich. 439, 26 Mich. 189; *Buell* v. *Irwin*, 24 Mich. 145; *Moyer* v. *Scott*, 30 Mich. 345; *Burnett* v. *Caldwell*, 9 Wall. 290.

In this case it was agreed that Mrs. Bowling should have possession of the premises while she should not be in default, and that, in case of her default, the vendor might take immediate possession of the premises. To hold that, after a default on the part of the vendee, a sale of the premises cannot be made until one year and six weeks have elapsed, would be to read into the contract conditions not contemplated by the parties when they made it.

Defendants had been in default six months when the bill was filed. The decree was not taken until six weeks

later. They were then given 30 days in which to perform the contract, and possession of the premises for a like period of time before they were required to account for its rental value. We do not think they have any occasion to complain of this decree. The commissioner, in advertising the property, should be directed to do it for the same length of time, and in the same manner, as in a foreclosure of mortgage.

The other objections have been considered, but will not be discussed.

The decree is affirmed, with costs.

The other Justices concurred.