STATE OF MAINE *vs.* INTOXICATING LIQUORS,

GRAND TRUNK RAILWAY, Claimant.

Androscoggin.   Opinion December 11, 1906.

*Intoxicating Liquors.   Interstate Commerce.   Common Carriers.   Transit ends,*
*when.   " Wilson Act."   R. S., chapter 29, section 48.*

Intoxicating liquors were shipped from Boston, Massachusetts to Lewiston,
Maine, by a continuous way bill over the Boston & Maine Railroad and
the Grand Trunk Railway of Canada. The consignee named in the way
bill and upon the packages was fictitious. The car in which the liquors
were being transported by the claimant company, after its arrival in the
Lewiston yard, was shifted from track to track, and was finally left upon
the " team track " so called, about one hour after its arrival. In about
ten minutes thereafter the liquors were seized, and subsequently libelled.
The team track was about twenty rods from the claimant's freight station,
and was commonly used for the purpose of unloading freight directly
from cars onto teams. In the ordinary course of business, these liquors,
if called for by the consignee or owner within two or three days, would
have been unloaded from the car onto a team. But if not so taken within
that time, they would have been taken in the car to the freight house
and there unloaded by the claimant. Between the time of the arrival of
the car at the team track, and the seizure of the liquors by the officer,
the car which was sealed had been opened by the claimant's servants, and
other merchandise which came in the same car was being taken out of it.
But the liquors had not been removed or disturbed by any one. It did
not appear that the consignee had in any way consented to take the
liquors from the car on the team track.

*Held:* that in the absence of evidence showing a special arrangement, or
assent, to the contrary, a railroad carrier's contract of carriage contem-
plates that the freight shall be transported to the carrier's freight house,
and there removed from the car. So much is to be implied from the gen-
eral usages of the business of such carriers. In this case there is no
evidence that the carrier's duty in this respect was modified or waived by
contract or otherwise. If the consignee had consented to take the liquors
from the car on the team track, the carrier's duty of transportation would
have been ended. Otherwise, it would still have been the duty of the
carrier to complete the transportation by taking the liquors to its freight
house, there to be removed from the car. Under the facts shown, the

transportation was incomplete, and the liquors were not subject to seizure under the police power of the State, in contravention of the interstate commerce provision of the Federal Constitution.

*State* v. *Intoxicating Liquors*, 95 Maine, 140, distinguished.

On report.   Judgment for claimant.

Libel for the condemnation of intoxicating liquors seized and alleged to be intended for unlawful sale in this state, said liquors consisting of six barrels each containing thirty-two gallons of whiskey, three barrels each containing thirty-two gallons of rum, two barrels each containing thirty-two gallons of gin, one keg containing twenty gallons of whiskey, and ninety-six bottles each containing one quart of whiskey.   These liquors had been shipped from Boston, Mass. to Lewiston, Maine, by continuous way bill over the Boston & Maine Railroad and the Grand Trunk Railway of Canada.   Soon after the arrival of these liquors in Lewiston and before they had been removed from the car containing them to the freight house of the claimant company, they were seized by a deputy sheriff, without a warrant, and held until a warrant was procured from the Lewiston Municipal Court, as provided by Revised Statutes, chapter 29, section 48.   In accordance with the provisions of section 50 of said chapter 29, the officer seizing these liquors then immediately filed a libel against these liquors and the vessels containing the same with the Judge of said Municipal Court who issued monition and notice of the same. On the return day of the libel, and in accordance with the provisions of section 51 of said chapter 29, the Grand Trunk Railway Company of Canada appeared and filed in writing a claim to these liquors as follows :

"And now comes the Grand Trunk Railway Company of Canada, a corporation created and existing under the laws of the Dominion of Canada, and a citizen of said Dominion of Canada, said corporation being a common carrier, and specifically claims the right, title and possession in the items of property hereinafter named, as having a right to the possession thereof, at the time when the same were seized.   And the foundation of said claim is that they were in possession of said Grand Trunk Railway Company of Canada, and were in transit from Boston, in the State of Massachusetts, to Lew-

iston in the State of Maine, and were taken from the lawful possession of said Railway Company, on the fifteenth day of December A. D., 1905, from a car standing on the side-track in the yard of said Grand Trunk Railway Company, situated on the North side of Beech Street, in said Lewiston, by L. J. Luce, one of the deputy sheriffs of Androscoggin County ; and the claimant declares that said items of property were not so kept or deposited for unlawful sale, as is alleged, in the libel of said L. J. Luce, and in the monition issued thereon." (The description of liquors and vessels here follows but is omitted in this report.)

The matter was then heard by the Judge of said Municipal Court who found that the liquors seized were intended for unlawful sale and that the claimant was entitled to no part of the same, and in accordance with the provisions of said section 51 of said chapter 29, declared the liquors and vessels containing the same forfeited. The claimant then appealed to the Supreme Judicial Court as provided by said section 51.

The appeal was heard at the January term, 1906, of the Supreme Judicial Court, Androscoggin County. At the conclusion of the evidence and by agreement the case was reported to the Law Court "to render such judgment as the rights of the parties require."

All the material facts appear in the opinion.

*Ralph W. Crockett, County Attorney,* for the State.

*L. L. Hight,* for claimant.

SITTING: WISWELL, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J. This case of a libel for the condemnation of intoxicating liquors seized, and alleged to be intended for unlawful sale in this State, comes before the Law Court on report. The liquors in question were shipped by Reuben Ring & Co., of Boston, Massachusetts, from Boston to Lewiston, Maine, by continuous way bill over the Boston & Maine Railroad and the Grand Trunk Railway of Canada. The consignee named in the way bill and upon the packages was "John Cram" a name which the State claims is fictitious. In the complaint it is alleged that the liquors "were

unlawfully kept and deposited by some person to your complainant unknown, in a car on a side track in the yard of the Grand Trunk Railway Company, situated on the north side of Beech Street in said Lewiston." The claimant is a common carrier, and claims a return of the liquors on the ground that when seized they were in its possession as a common carrier and in transit, under the continuous way bill, and were still protected from seizure by the interstate commerce clause of the federal constitution.

From the evidence we find the following additional facts. The car in which the liquors were being transported by the claimant company arrived in its Lewiston yard at about ten minutes before seven in the morning of December 15, 1905. Subsequently it was shifted from track to track in the yard, and was finally left upon the "team track," so called, about one hour after its arrival. In about ten minutes thereafter, the liquors were seized, and held until a warrant was procured under the statute, R. S., chap. 29, sect. 48, and afterwards were properly libelled. The team track was about twenty rods from the claimant's freight station, and was commonly used for the purpose of unloading freight directly from the cars onto teams. In the ordinary course of business, these liquors, if called for by the consignee or owner within two or three days, would have been unloaded from the car onto a team. But if not so taken within that time, they would have been taken in the car to the freight house and there unloaded by the claimant. Between the time of the arrival of the car at the team track and the seizure of the liquors by the officers, the car, which was sealed, had been opened by the claimant's servants, and other merchandise which came in the same car was being taken out of it, but the liquors had not been removed or disturbed by anyone. There is little doubt that the name of the consignee as given was fictitious.

Under these circumstances, the State claims that carriage had ceased, that interstate transportation had ended, and with it the duties and responsibilities of the claimant as a carrier, and hence that the liquors were then subject to the police power of the State, exercised under the provisions of the prohibitory liquor law. It is claimed that the car had become a warehouse, and that the situation was in no essential respect different from what it would have been if the

liquors had been actually unloaded into the claimant's freight house. The State relies upon *State* v. *Intoxicating Liquors*, 95 Maine, 140, and *State* v. *Intoxicating Liquors*, 96 Maine, 415.

In the first case cited, the liquors which were consigned to the shipper's own order, arrived at the place of destination and were transferred by the carrier from the car to its freight house about nine o'clock in the forenoon of a certain day, and at about four o'clock in the afternoon of the following day they were seized by the officer, while in the freight house. There had been no delivery of the liquors, and no notice had been given to anyone of their arrival. The question decided was whether the liquors at the time of their seizure had arrived within the State, so as to be subject to its police powers, within the meaning of the Wilson Act, passed by Congress August 8, 1890, and within the construction placed upon that act by the Supreme Court of the United States in *Rhodes* v. *Iowa*, 170 U. S. 412. And the court decided that the transportation had been completed, that the liquors had arrived at their place of destination, and that storage had commenced. The liquors were condemned.

In its discussion, the court said,— "And the question is not, whether or not the liability of the railroad company for a loss continued as a carrier up to the time of the seizure, or had become that of a warehouse man. It is simply whether these liquors, when the actual transportation had been entirely completed, and when they had not only arrived at the place of their destination, but had been moved by the employees of the railroad company from the car to the company's freight house, there to await the order of the shipper, had arrived in the State, within the meaning of the Wilson Act, so as to be subject to our laws." And as already stated, the court answered the question in the affirmative, notwithstanding certain expressions in the opinion in *Rhodes* v. *Iowa*, which were believed to be unnecessary to the decision in that case, and therefore properly to be regarded as dicta. The court however indicated its duty and willingness to follow the determination of the federal Supreme Court, whenever the mooted point should actually be decided by it.

The claimant here contends that that time has now arrived, and claims that the point has been decided, contrary to our former

decision, by the federal court in *American Express Company* v. *Iowa*, 196 U. S. 133. In that case, the duties, as to delivery, of express companies, as carriers, was considered. The difference in the usages of railroad companies and of express companies as to the ultimate disposition by them of freight is in some respect very marked. These usages are so common and universal that they enter into and form a part of the carrier's contract, and the court may take judicial knowledge of them. It is open to argument, at least, whether, in view of the difference in the contracts of these two different kinds of carriers, the case of *American Express Company* v. *Iowa* can be considered as deciding the question now before us.

But we do not find it necessary to express our opinion upon this question, for we think the case now in hand must be distinguished from *State* v. *Intoxicating Liquors*, 95 Maine, 140. In this case we think the transportation contemplated and implied by the carrier's contract of carriage had not ended. In the absence of evidence showing a special arrangement otherwise, a railroad carrier's contract of carriage contemplates that the freight shall be transported to the carrier's freight house, and there removed from the car. So much is implied. Such is the effect of general usage. It is the duty of the carrier so to transport the goods. It owes this duty both to the shipper and to the consignee, and for breach of this duty it may be responsible to either. The freight house is the place contemplated where the consignee is to find the goods and where the shipper is to look for them in case the consignee does not take them. No doubt, in numberless instances, freight is unloaded directly from cars onto teams, without being put into a freight house. But this is done for convenience, by special arrangement, or after notice to shipper or consignee, assented to. If the goods are not taken by the consignee from the car, or if he does not assent to so doing, they must be taken to the freight house, unless it is impracticable by reason of bulk or otherwise.

In this case, there is no evidence that the carrier's duty was modified or waived by contract or otherwise. When it took the liquors it was bound to transport them to their destination at its freight house. It was not enough to place them upon a side track, where

the consignee could come and take them if he chose to do so.   Not even if the side track was ordinarily used by it for the purpose of enabling consignees, who chose to do so, to remove their goods directly from the cars, nor even if such was the purpose in this particular case.   It was *not enough* that the owner might call for them there.   It was only conjectural whether he would or not.   The consignee or owner might take the liquors there, or he might not. The case does not show that he was under obligations to do so, or that he had consented to do so.   If he had done so, the carrier's duty of transportation would have ended.   But if he had not done so, it would still have been the duty of the carrier to complete the transportation, by taking the liquors to its freight house, to be removed from the car.   So long as the transportation was incomplete, the liquors were not subject, by virtue of the Wilson Act, to seizure under the police power of the state.

*Judgment for the claimant.   Order*
*for a return of the liquors to issue.*