## SMITH B. WAITE *v.* HENRY I. STANLEY.

### October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

### Opinion filed December 12, 1914.

*Land Contract—Purchase Price Payable in Instalments—Con-*
*struction—Respective Interest of Parties—Unpaid Instal-*
*ments—Remedy of Vendor—Effect of Strict Foreclosure.*

A contract for the sale of realty and personalty for a specified sum of
money, payable in instalments, is indivisible and entire.

At law, a contract for the sale of land, payment to be made in instal-
ments, and title to be conveyed upon the last payment, is wholly
executory, the ownership of the property remaining in the vendor,
and the vendee having only an inchoate and imperfect right; but
in equity, although the legal estate is in the vendor, he holds it as
trustee of the vendee, with a charge or lien thereon as security for
the unpaid purchase-money, and, in the absence of stipulation to
the contrary, with the right to retain possession until the pur-
chase price is fully paid, while the equitable interest of the vendee
increases as each instalment is paid until he becomes the owner
of the whole beneficial interest and is entitled to a conveyance.

The vendee's rights under a contract for the sale of land may be fore-
closed by a suit in equity to compel him to pay the purchase price
within a designated time or be barred of all rights under the con-
tract.

Under a contract for the sale of land to be paid for in instalments,
title not to pass until all the instalments were paid, the vendor
could not recover unpaid instalments in an action of assumpsit
begun after they became due and on the same day that he began
a suit to foreclose the vendee's rights under the contract, which
resulted in a decree of strict foreclosure against the vendee, which
became absolute before the action of assumpsit was tried; for, when
that decree became absolute, the vendor's title to the property was
discharged of all interest of the vendee therein, and so there was
no longer any consideration for the vendee's promise to pay the
purchase price.

GENERAL ASSUMPSIT. Plea; the general issue. Trial by court at the June Term, 1913, Lamoille County, *Fish,* J., presiding. Judgment for the plaintiff for $854.03, and costs. The defendant excepted.

One item of the plaintiff's specifications, which was allowed and entered into the judgment, was, "To balance payment due Nov. 11, 1911, and interest due Nov. 11, 1912, $598.00." This item was the unpaid balance of the first instalment of purchase-money stipulated to be paid in the land contract signed and sealed by the parties, which, so far as material in this case, was as follows:

"Articles of agreement, made the 31st day of October, A. D. 1911, between Smith B. Waite of * * *, on the first part, and Henry I. Stanley of * * *, of the second part, as follows, to wit: the said party of the first part for the considerations hereinafter named, hereby agrees to sell to said party of the second part, who hereby agrees to purchase, the following described lands and personal property consisting of farm and dairy tools, live stock, etc., namely: * * *.

"The said party of the second part agrees to pay to said party of the first part, for the said premises and above described personal property the sum of six thousand dollars in the following instalments, that is to say, twelve hundred dollars on or before the tenth day of November, 1911, then two hundred dollars and interest on the whole unpaid debt on or before the 11th day of November in each year for four succeeding years (1912, 1913, 1914, and 1915), then five hundred dollars and interest each year and interest until the full amount of the purchase price has been paid.

"And the said party of the second part does hereby agree to pay all taxes, rentals, assessments and insurance imposed on said premises when they are due each year; and not to commit or suffer any waste or damage on said land, by cutting down, carrying off, or destroying any timber or trees, growing or being thereon, other than shall be necessary for making necessary buildings or repairing the same, or for fences or for fuel; and the said party of the second part shall carry on and cultivate the farm in good, husbandlike manner and shall care for the stock in the same manner, always keeping them in good order

and condition, and shall improve the buildings to the extent of at least $150 each year by the way of repairs.

"It is further agreed that the ownership of all personal property and additions thereto is and is to remain in the said S. B. Waite.

"It is hereby agreed that if the said party of the second part shall fail in the performance of the aforesaid agreements or stipulations on his part to be performed, then it shall be lawful for the said party of the first part, at any time after such default, if he sees fit, to declare the contract forfeited and vacated, and to re-enter upon and take possession of said premises, and all buildings and improvements thereon, and all accretions of personal property on said premises, and to sell and dispose of the same to any person or persons whomsoever; and the said party of the first part shall and may retain all sums of money paid by the said party of the second part, or any subsequent purchaser, as and for liquidated damages, for such failure.

"It is further agreed by and between the parties of the first and second part that the ownership of all the products of the dairy and farm of all description shall be and remain in the party of the first part until the obligations due each year are fully paid.

"And the said party of the first part does hereby agree that on payment of said purchase-money and interest, and the performance of the agreements and stipulations as aforesaid, by and on the part of the said party of the second part, he or his heirs or assigns will by a good and sufficient warranty deed, convey or cause to be conveyed to the party of the second part, his heirs or assigns, the aforesaid hereditaments and premises."

The plaintiff offered this contract in evidence, (1) for the purpose of showing the agreement for the payment of the $1,200; and (2) in connection with the testimony of the witness as to the extension of his contract by parol. The defendant objected to its admission on the grounds (1) that the action is general assumpsit, and the item for the part of said $1,200 unpaid cannot be recovered, the contract being executory; (2) because the agreement is under seal, and the action to recover the claimed amount is under covenant, not assumpsit. The evidence was admitted and exception saved. Defendant also excepted to the judgment rendered, on the ground that it contained the item of $598.35 arising under the land contract.

*W. B. Locklin* for the defendant.

*R. W. Hulburd* and *M. P. Maurice* for the plaintiff.

WATSON, J.   Although the contract upon which the plaintiff bases his right to recover the item in dispute was for the sale by him to the defendant of both land and personalty, yet the consideration was single, the contract indivisable and entire. *Fay* v. *Oliver*, 20 Vt. 118; *White* v. *White*, 68 Vt. 161, 34 Atl. 425.   It was also executory.   At law it merely imparted to the defendant an inchoate and imperfect right.   The ownership of the property remained in the plaintiff.   To make the ownership of the defendant complete something remained to be done by the plaintiff: he must pass his legal interest in legal form.   In other words, he must convey the property according to the mode of conveyance required by law.   This he was not obligated to do until full payment of the purchase-money and interest had been made by the defendant in annual instalments covering a period of twelve years.   In *Vermont Marble Co.* v. *Mead*, 85 Vt. 20, 80 Atl. 852, it is said that, "In law a contract for the sale of land is wholly, and in every respect, executory; the vendor remains to all intents the owner of the property, and can convey it free from any legal claim or incumbrance; and the vendee acquires no interest whatever in the land."

Under the contract the defendant had the right of possession.   By its terms $1,200, the first instalment of the purchase-money, was to be paid on or before November 10, 1911.   It was not so paid.   At some time, but when does not appear, it was paid in part, leaving unpaid the sum of $598.35, the amount of the item in controversy.   The plaintiff says the time of the payment of this sum was extended by parol.   The record, however, does not show such extension to any definite time, nor upon any new consideration, nor that the defendant was not in default as to such payment at the time of the commencement of this suit and the suit in equity hereinafter noticed.   The second instalment was stipulated to be paid on or before November 11, 1912. Whether it was so paid does not expressly appear, but we assume it was not.   This action was commenced two days after this instalment became due, and on the same day strict foreclosure proceedings in equity "were brought on said contract" by the plaintiff and therein a decree was taken in his behalf, which decree

became final May 5, 1913, a day prior to the trial of this action at law in the court below. When these two suits were commenced the defendant was in default in payment of the purchase-money to the extent of the unpaid portion of the first instalment and the second instalment. By reason of such default the plaintiff saw fit to avail himself of the provision of the contract allowing him, if defendant should fail in performance, "to declare the contract forfeited and vacated, and to re-enter upon and take possession of said premises." The foreclosure proceedings must have been for the effective enforcement of this provision, (being "brought on said contract,") and the decree therein conclusively shows that the defendant had failed to perform, and that by reason thereof the plaintiff was entitled to put an end to the contract and be restored to the possession of the property agreed to be conveyed. No intimation is made of nonperformance in any respect other than as above stated.

In equity after the contract was signed by the parties, although the equitable estate vested in the defendant, yet the legal estate remained in the plaintiff, he holding it as trustee for the defendant and having a charge or lien on the estate as security for the payment of the unpaid purchase-money, and in the absence of stipulations to the contrary, a right to retain the possession until the purchase-money is fully paid. *Wilkins* v. *Somerville,* 80 Vt. 48, 66 Atl. 393, 11 L. R. A. (N. S.) 1183, 130 Am. St. Rep. 906; *Van Dyke* v. *Cole,* 81 Vt. 379, 70 Atl. 593; *Vermont Marble Co.* v. *Mead,* 85 Vt. 20, 80 Atl. 852. In *Lysaght* v. *Edwards,* L. R. 2 Ch. Div. 499, Sir George Jessel, Master of the Rolls, saying the effect of such a contract for sale of real property was so completely settled before the time of Lord Hardwicke that he spoke of the settled doctrine of the court as to it, stated it as follows: "It is that the moment you have a valid contract for sale the vendor becomes in equity a trustee for the purchaser of the estate sold, and beneficial ownership passes to the purchaser, the vendor having a right to the purchase-money, a charge or lien on the estate for the security of that purchase-money, and a right to retain possession of the estate until the purchase-money is paid, in the absence of express contract as to the time of delivering possession." The extent of the vendee's equitable estate is well stated by the Supreme Court of the United States in *Jennison* v. *Leonard,* 21 Wall. 302, 22 L. ed. 539. There the Court, speaking through

Mr. Justice Hunt, said: "The legal title remains in the vendor, while an equitable interest vests in the vendee to the extent of the payments made by him. As his payments increase, his equitable interest increases, and when the contract price is fully paid, the entire title is equitably vested in him, and he may compel a conveyance of the legal title by the vendor, his heirs or his assigns. The vendor is a trustee of the legal title for the vendee to the extent of his payment." *Sievers* v. *Brown,* 34 Oregon 454, 56 Pac. 171, 45 L. R. A. 642.

In *Hansbrough* v. *Peck,* 5 Wall. 497, 18 L. ed. 520, the land contract, so far as material here, was very like the one before us. The Court, through Mr. Justice Nelson, said: "In case of a default in the payments, there are several remedies open to the vendor. He may sue on the contract and recover judgment for the purchase-money, and take out execution against the property of the defendant, and among other property, the land sold; or he may bring ejectment, and recover back the possession; but in that case, the purchaser, by going into a court of equity within a reasonable time and offering payment of the purchase-money, together with costs, is entitled to a performance of the contract; or the vendor may go in the first instance into a court of equity, as in the present case, and call on the purchaser to come forward and pay the money due, or be forever thereafter foreclosed from setting up any claim against the estate." See also *Clark* v. *Hall,* 7 Paige 382.

The record before us shows that in the foreclosure proceedings brought "on said contract," a decree of strict foreclosure was taken by the plaintiff, which decree became final and by it he again became the sole and absolute owner of the property covered by the contract of purchase, before the trial of this suit at law on the merits. Such a suit in equity "is simply an action to compel the vendee to make payment of the purchase price within a specified time, or else be barred of all rights under the contract,—that is an action to foreclose the contract." 3 Pom. Eq. Jur. §1262. Whether the fact that the indivisible contract covered personal property as well as real estate, made any difference in the proper application of this principle it is now too late to inquire.

Concerning a decree of strict foreclosure upon such a contract the Master of the Rolls further said in *Lysaght* v. *Edwards,* (already noticed,) "Such a decree has sometimes been called a

decree for cancellation of the contract; time is given by a decree of the court of equity, * * * * and if the time expires without the money being paid, the contract is cancelled by the decree or judgment of the court, and the vendor becomes again the owner of the estate." In *Morgan* v. *Dalrymple,* 59 N. J. Eq. 22, 46 Atl. 664, it was held that where title is retained under an executory contract to convey, and the vendee fails to make payment as stipulated, the vendor has the right to enforce the obligation and cut off the vendee's equitable interest in the land arising out of the agreement, by foreclosure proceedings, and that as the legal title to the land was still in the vendor the only force of the decree is to cut off the equitable title of the vendee by force of the agreement. The decree in this case was affirmed by the Court of Errors and Appeals, as reported in 60 N. J. Eq. 466, 46 Atl. 666. That such a decree puts an end to the contract and restores the possession of the property to the vendor, is according to the holdings in *Hansbrough* v. *Peck,* noticed above; *Church* v. *Smith,* 39 Wis. 492; *Sparks* v. *Hess,* 15 Cal. 186; *Nelson* v. *Hanson.* 45 Minn. 543; and *Sievers* v. *Brown,* 34 Oregon 454, 56 Pac. 171, 45 L. R. A. 642. Indeed, we have found no decision to the contrary.

Under the contract, the promise of the vendor to convey the property constituted the consideration for the vendee's promise to pay the purchase-money, (*Ferry* v. *Stephens,* 66 N. Y. 321,) and since by the decree in the equity case, all interest of the vendee was foreclosed, by reason of which the contract was ended and the absolute title to the property reinstated in the vendor, there was no longer any consideration for the vendee's promise to pay the purchase price. "A court of chancery regards the transfer of real property in a contract of sale and the payment of the price as correlative obligations. The one is the consideration of the other; and the one failing, leaves the other without a cause." *Refeld* v. *Woodfolk,* 22 How. 318, 16 L. ed. 370; *Turner* v. *Ogden,* 66 U. S. (1 Black.) 450, 17 L. ed. 203. Thus the matter stood at the time of the trial of this action at law in the court below, and the item in dispute being then without consideration the defendant was not liable therefor. See *Sawyer* v. *McIntyre,* 18 Vt. 27; *Arbuckle* v. *Hawks,* 20 Vt. 538; *Graff's Executrix* v. *Kelly's Executors,* 43 Pa. St. 453, 82 Am. Dec. 580; *Day* v. *Lowrie,* 5 Watts 412; *Moore* v. *Smith,* 24 Ill. 512.

It follows that to receive the land contract in evidence for the purposes named in the offer, was error, and the defendant's exception in this respect, also his exception to the judgment on the ground that it includes the said item arising out of the land contract, must be sustained.

*Judgment reversed, and judgment for the plaintiff to recover the sum of $255.68.*

TAYLOR, J., dissenting. I am unable to concur with the views expressed by the majority. A sufficient reason for dissent is to be found in the fact that the question on which the case is turned was not raised, nor even hinted at, in the court below. The ground of objection was that general assumpsit was not the appropriate remedy as to the item in controversy. The question first arose when the plaintiff offered the contract in evidence. The defendant objected upon the following grounds: "First, because the action is general assumpsit, and under the common courts this item * * * cannot be recovered, because the contract is executory, therefore that sort of a contract or the damages thereunder * * * cannot be recovered under common counts. Second, because the agreement is under seal, and the action to recover the claimed amount is under covenant and not assumpsit." The court admitted the contract for the purpose of showing the agreement for the payment of the $1,200 in connection with the testimony of the witness as to the execution of the contract by parol. After judgment the defendant was allowed an exception thereto on the ground "that said judgment contained an item of $598.35 arising under a land contract under seal * * *, for that recovery cannot be had for such item in this form of action." The record discloses no other exception or ground of objection relating to this matter.

The defendant in his brief here for the first time suggested that there could be no recovery although the brief is almost wholly devoted to the question raised below. The point was not touched upon by the plaintiff in his brief nor in oral argument. If he was aware that the defendant was seeking to raise such a question, though it is quite possible he was not, he was justified in relying upon the repeated holding of this Court that it will consider on review only questions ruled upon by the trial court.

The wisdom of adhering to that rule is well illustrated in this case, when we consider the results of a departure from it. The plaintiff is subjected to a final judgment against him without a full opportunity for hearing, and the trial court is put in error although ruling correctly on the question presented. The plaintiff's evidence tended to show that the contract under seal was enlarged by a parol agreement as to the time of payment of the $1,200. It is to be presumed in support of the judgment that the court found as the plaintiff claimed in that regard. *Usher* v. *Severance*, 86 Vt. 528. As the contract was set at large by the parol agreement, assumpsit and not covenant would be the appropriate remedy. *Smith* v. *Smith*, 45 Vt. 433, 440; *King* v. *Lamoille Valley R. Co.*, 51 Vt. 369, 376. The defendant was in possession and the purchase price of the premises was payable in instalments. In such circumstances the covenant for the payment of all except the last instalment was independant of the plaintiff's covenant to convey. 39 Cyc. 1911 and cases cited, 29 Am. & Eng. Ency. of Law 690 and cases cited. Each instalment could be sued for as it fell due. To that extent the contract would be regarded as executed. As to the item in controversy, it had become a debt due and owing with nothing remaining to be done except to pay the money. In such case general assumpsit would lie. *Chaffee* v. *Rutland R. Co.*, 55 Vt. 110, 139; *Parker & Son* v. *Clemon*, 80 Vt. 521, 68 Atl. 646.

I might very properly close this dissent here; but the importance of the question discussed in the majority opinion and my inability to subscribe to the rule laid down is my justification for considering a question which I deem to be outside the record.

To deny any remedy in a case like this it must be held that the contract is cancelled by the foreclosure and so furnishes no basis for the action. The argument of the majority is based upon the assumption that the foreclosure proceeding operated to rescind or cancel the contract. I am not prepared to say that if the plaintiff had rescinded the contract, or acted in defiance of it, or taken legal steps to terminate it, he could maintain this action. Of the cases cited in the majority opinion none, however, go to the point of holding that a foreclosure of the vendee's rights under a land contract, with repossession by the vendor after the expiration of the law day, terminates the contract so

as to bar rights of action that have already accrued; nor is there, in my judgment, any just reason for adopting such a rule. There is a distinction in the cases between an act of the vendor rescinding the contract and an act "under the contract" to enforce his rights; and failure to note this distinction has lead to confusion.

It will be helpful in discovering the true rule to consider the relations of the parties under such a contract. It does not do to lose sight of the fact that equity regards such a contract as executed and as operating to transfer the estate from the vendor to the vendee. The latter is treated as the owner of the land. The vendor holds the legal title as trustee for the vendee, but only as security for the payment of the unpaid portion of the purchase price. *Vermont Marble Co.* v. *Mead et al.*, 85 Vt. 20, 33. As the vendee has the full equitable estate, subject of course to the incumbrance of any unpaid purchase-money, he holds the land possessed of all the incidents of real ownership although still wanting the confirmation of his legal title for purpose of security against claims of third persons. He may convey or incumber it; may devise it by will; on his death intestate, it descends to his heirs instead of his administrators. 1 Pom. Eq. Jur. §368; 27 Harvard Law Review 79. Subsequent improvements, rises in value, and other advantages inure to his benefit. On the other hand he must bear all losses as from fire or other accidental cause, all depreciations in value and other disadvantages. In short, he is entitled to all the benefits and assumes all the risks of ownership. 4 Pom. Eq. Jur. §1406.

The equitable interest of the vendor is correlative with that of the vendee. He has no beneficial interest in the land. Only the naked legal title remains which he holds in trust for the vendee with a lien so long as any part of the purchase price remains unpaid. This lien is not an interest in the land, is neither a *jus ad rem* nor a *jus in re,* but merely an incumbrance. 1 Pom. Eq. Jur. §368; 27 Harvard Law Review 79.

It was held in *Bowin* v. *Lansing,* 129 Mich. 117, 95 Am. St. Rep. 427, citing several cases, that the vendor's title is only a trust coupled with an interest by way of security for a debt, which is personalty. The vendee is the *cestui que trust* as to the legal title. It is said in *Lewis* v. *Hawkins,* 23 Wall. 119, 127: "In many of the cases it is held that the lien of the vendor who has not parted with the legal title is substantially a mortgage."

In *Church* v. *Smith,* 39 Wis. 492, cited in the majority opinion, it is held: ''The relation between the parties is analogous to that of equitable mortgagor and mortgagee. The former has the right of redemption and the latter the correlative right of foreclosure.'' In *Sparks* v. *Hess,* 15 Cal. 186, also cited by the majority, it is said: ''The vendor retains title as security for the debt. He may sue at law for the balance of the purchase-money or file his bill in equity for specific performance of the contract and take an alternative decree that the property be sold and applied and that vendee pay deficiency.'' It should be observed that under the practice in California the lien is enforced by a foreclosure sale rather than by a decree of strict foreclosure, as in this State; but it must be apparent that the decree affects the existence of the contract in both cases alike. Many cases could be cited in support of the proposition that the relations of vendor and vendee are similar to those of mortgagee and mortgagor. It is sufficient to call attention to the following additional cases: *Church* v. *Smith,* 39 Wis. 492; *Lysaght* v. *Edwards,* 2 Ch. Div. 499; *Carthage &c. Mills* v. *Village of Carthage,* 200 N. Y. 1, 93 N. E. 60; *Miles* v. *Hemenway* (Or. 1910) 111 Pac. 696; *Jordon* v. *Johnson* (Ind. App.) 98 N. E. 143; *Rexford* v. *So. Woodland Co.,* 208 Fed. 295; note 57 L. R. A. 643.

It comes to this then that for all practical purposes their relation is that of mortgagor and mortgagee. The vendee is the beneficial owner with right of redemption notwithstanding default in payment, while the claim of the vendor is but an ordinary money debt secured by the contract as by a mortgage. *Walker* v. *Cosgrain,* 101 Mich, 608; *McGregor* v. *Putney,* 75 N. H. 113, 71 Atl. 226.

When the defendant went into possession under the contract it was so far executed as to permit the recovery at law of instalments of the purchase-money as they came due. The defendant being in default as to part of the first instalment, the plaintiff brought suit therefor and soon after brought foreclosure proceedings which went to a decree while the suit at law was pending. The item thus sued for was not included in the sum found due in equity. After the time of redemption had run the plaintiff had judgment in the suit at law against the claim that general assumpsit was not his remedy. It is now said that he has no cause of action because the contract was terminated by the foreclosure and because the consideration of the defendant's promise

27

to pay, viz., plaintiff's promise to deed, has wholly failed.  As to the former claim, the action is not founded upon the written contract but, instead, upon a promise, express or implied, to pay money in consideration of an antecedent debt then due and owing.  The court may have found an express agreement to pay, independent of the written contract; but however that may be, the law would imply such an agreement.  As to failure of consideration, the claim is without merit, for the consideration of the promise sued upon was not plaintiff's promise to deed but defendant's antecedent debt, and as to this there was no failure.  Assuming that the consideration of the promise on which the action is based was plaintiff's promise to deed, I am unable to see how the foreclosure defeats the right of action which had already accrued.  At the time the suit was commenced the defendant was owing the sum in controversy.  Then or soon after he was in default on another instalment of the purchase price.  He suffered his rights in equity under the contract to become barred by failing to pay as ordered by the decree.  Is it to be said that plaintiff's right of action, if the consideration thereof could be regarded as assumed, is defeated by defendant's further default?  That is the logical result of the argument unless we regard the bringing of foreclosure bill as an election to rescind the contract.

It may be conceded as already intimated that, if the plaintiff had elected to rescind the contract by declaring a forfeiture and ejecting the defendant after default, he could not afterwards maintain a suit at law for the purchase price; but that is not this case.  In all that he did the plaintiff acted within and upon the contract. By bringing the action for the past due instalment he elected to treat the contract as still in force.  *Foster* v. *Lour* (Wis.) 110 N. W. 829.  By foreclosure he took the only consistent course to enforce his lien upon the land, and in so doing reaffirmed the contract.  The decree did not set the contract aside but presumably conformed to it.  *Jones* v. *Bowling,* 117 Mich. 288, 75 N. W. 611.  By the decree plaintiff merely said to the defendant you must pay according to contract or be foreclosed, and it was only by further default on the part of the defendant that he was divested of his equitable estate.  If he paid under the decree, was the contract cancelled?  If not, by what course of reasoning was it cancelled by the same decree if he did not pay?

I select a few from the many cases in other jurisdictions in which this question has arisen.    It was held in *Wilburn* v. *Haines,* 53 Ill. 207, that the bringing of a suit by the vendor to recover possession of the premises did not amount to a rescission of the contract.    In *Etterman* v. *Hyman,* 192 N. Y. 113, 84 N. E. 937, it was said that a vendor does not rescind when he insists in a court of equity on a right springing from the contract and payment thereon pursuant to its terms; that he does not repudiate the contract but stands on it and affirms it as the foundation of the right he seeks to enforce as fully as if he sought specific performance.    In *Henst* v. *Trow P. & B. Co.,* 142 N. Y. 637, 37 N. E. 566, it was held that the termination of a contract as to the future by one party owing to the default of the other is a rescission neither *ab initio* nor in any true sense.    In *Williams* v. *Forbes,* 47 Ill. 148, held that when a vendor reserves the right to rescind on failure of the vendee to pay the price of the land, bringing an action of ejectment will not bar a prior action of assumpsit on the notes.

I maintain that the right to sue at law for an overdue instalment of the purchase-money and in equity to enforce the lien are distinct and independent remedies and that the vendor may prosecute either, or both at the same time.    *Field* v. *Asley,* 79 Mich. 231, 44 N. W. 602; *Moody* v. *Eastern Oregon Land Co.,* 180 Fed. 532; 39 Cyc. 1847-1848 and cases cited; note 73 Am. St. Rep. 567 and cases cited.    While it may be said that the contract was terminated as to the future by the foreclosure proceedings, the effect on rights that have become fixed is entirely different than it would have been if the contract had been cancelled because of some equitable ground for setting it aside.    This distinction is made in *Lysaght* v *Edwards,* 2 Ch. Div. 499, relied upon by the majority, a distinction which they seem to have overlooked.

I can conceive of no valid reason for making a distinction between the effect to be given to a foreclosure of a mortgage and a foreclosure of such a contract as this.    The plaintiff like a mortgagee should still be at liberty to pursue his remedy *in personam* and recover the purchase price remaining unsatisfied. In practice it would work complete justice to both parties.    The majority holding makes it possible for the vendee in possession to profit by his own wrong, or to escape the consequences of his contract when it is to his advantage, by compelling the vendor to

foreclose. If the value of the property depreciates while in the possession of the vendee, should the vendor be made to suffer the loss? This is the result if he is referred to his security alone to recover the contract price. On the other hand, if the vendor recovers the property by foreclosure, the debt for the purchase-money is discharged *pro tanto.* If it is equal in value to the unpaid balance, the debt would be fully discharged. The defendant would have to pay so much only of the purchase price as remained unsatisfied by the return of the property. *Devereaux & Meserve* v. *Fairbanks,* 52 Vt. 587.

This view is consistent with all our cases. Of those cited by the majority *Sawyer* y. *McIntyre,* 18 Vt. 27, related to a contract concerning personal property and bears no analogy to the case at bar. In *Arbuckle* v. *Hawks,* 20 Vt. 538, the defendant (the vendor) had rescinded the contract and ejected the plaintiff (the vendee), thus terminating the contract. The court properly held that having done so all claim upon the note given for the purchase-money was gone. But the court intimated that the plaintiff might have claimed a lien upon the land and at the same time maintain a suit for the price, which is consistent with the plaintiff's claim here.

The case does not require the application of equitable principles to an action at law, however much could be said in favor of that practice. Reference to the rights of the parties in equity is made only to show that the bringing of the foreclosure suit was not a rescission of the contract and that the effect of the proceeding was not to cancel it so as to leave the action unsupported.

*I am authorized to say that Powers, C. J., concurs in this dissent.*